[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 55 
The decision in this case depends upon the proper construction of the contract made between the parties to each of the above actions. The plaintiff being the holder of a bond and mortgage against each of the defendants, executed before the passage of the legal tender act by congress, claimed that the moneys secured thereby were payable in coin, while the defendants claimed to discharge the debts by treasury notes, commonly known as greenbacks.
To prevent litigation the parties respectively entered into a contract on the 28th of May, 1869, by which it was agreed "that if it shall at any time hereafter be determined and adjudged by the Supreme Court of the United States and become the law of the land, to the effect or involving the consequence that the payment at this time of the said sum of ____, this day paid in legal tender notes, is not a good and sufficient payment thereof, and that the said Albert Woodruff is entitled to demand and the said Franklin Woodruff bound to pay the same in gold coin, then that on such decision being made and becoming the law of the land," it was provided *Page 57 
in substance that gold coin should be paid upon the return of the greenbacks.
After the decision of the Supreme Court of the United States inHepburn v. Griswold (8 Wal., 603), holding the legal tender act as to debts contracted before the passage of the act unconstitutional, the plaintiff commenced these actions to recover the damages for its violation by the defendants, they having refused to substitute coin for paper currency. This decision having been since overruled by the same court in Knox
v. Lee and Parker v. Davis (12 Wal.; 457), it is now insisted by the appellants that the plaintiff has no cause of action upon the legal theory that the last decision is obligatory, and establishes (so far as a decision of the court can do it) that the act in question is constitutional, and hence that it was not lawful at the time the contract was made or at any time since to demand gold coin in payment of the mortgages.
The same general rules are applicable to the construction of this contract as to all others. We must consider the situation of the parties, the subject-matter of the contract, and the surrounding circumstances, with a view of ascertaining the purpose and intent of the parties.
We are to assume that the parties made these contracts in good faith, and for the praiseworthy object expressed, of avoiding litigation, and we must construe their language if practicable with a view to this object, and in the light of such existing facts as the parties are presumed to have known. The constitutionality of the legal tender act has been challenged from the day of its passage to the present time, and has been the fruitful source of controversy in the courts and among the people.
The case of Hepburn v. Griswold was first argued at the December term, 1867. Subsequently, upon the application of the attorney-general of the United States, a reargument was ordered, which took place at the December term of 1868; so that when these contracts were made on May 28, 1869, the final argument had been made, and the case was pending before the court for decision. These were facts of public *Page 58 
notoriety, relating to the subject of the contract, which must be presumed to have been known by the parties at the time of making it; and the language used must be construed with reference to them. The liability of the defendant to pay gold coin was intended, I think, to depend upon the decision which the court should make in that case, providing, of course, that the court should pass definitely upon that question. The words "and become the law of the land to the effect or involving the consequences," that the payment of legal tender notes was not sufficient, only mean that the precise question should be decided. In that event, the parties assumed that it would become the law of the land. In a strict sense the decisions of courts are not the law of the land, but the evidence of it. Courts cannot make laws. They determine only what the law is; and while their decisions may operate as laws upon the property and rights of parties, they are only declaratory, and not creative like legislative acts and treaties; but the language must be taken in its practical sense. The counsel for the appellant is quite correct in saying that a decision of a court overruling a prior decision is a legal adjudication that the prior decision was not the law at the time it was made, although there may be rights of contract acquired under the first which the last decision will not affect. But this position is not controlling in this case. The parties contracted for peace; not for a postponement of litigation. They agreed, in substance, that if the court should thereafter decide that the legal tender act was unconstitutional, the defendants should pay their mortgages in gold coin. They cautiously provided that the decision should involve that consequence; and they assumed if it did that it would become the law of the land. It cannot be supposed that the parties intended to leave each other at liberty to contest the question after a decision was made. If that was so, the contract was useless, and operated only to postpone the litigation. Still less can we suppose that the parties contemplated a reversal of the decision by the same court. The only rational construction of this contract is that *Page 59 
the parties agreed to submit their respective claims to a decision of the court upon the question. When that decision was made the liability of the defendants was fixed. There is no dispute that the decision of Hepburn v. Griswold covered the point. The contingency, therefore, upon which the defendants agreed to pay gold coin had happened, and we cannot alter or change the contract. The defendants occupy the position of agreeing to be content if the decision was in their favor; but, if not, they would still be at liberty to litigate for a reversal.
The answer does not deny that the decision had been made upon the precise point; but it denies that the legal tender act is unconstitutional; and the counsel avows that the defence was undertaken to procure a reargument of the question in these cases, and a reversal of the decision. This was contrary to the terms of the contract. The abstract question of the constitutionality of the act was not the test made by the parties; but the test was the decision of the court upon it, which was in effect agreed to be final. Otherwise the contract would be indefinitely prolonged; for it will never be impossible for the court to overrule its own decision; and, upon the defendants' construction, so long as that possibility exists, their liability is contingent. The counsel for the appellants claims that the decision of Hepburn v. Griswold was heard by less than the whole number of judges composing the court; that the decision was made by a bare majority, and under circumstances which did not entitle it to confidence as a final adjudication. Exactly what influence this should have in construing the contract is not clearly perceived; but as the circumstance was pressed upon the argument, it is proper to say that the position cannot be sustained, either as to the facts or inference.
By the act of March 3, 1863, while Mr. Lincoln was president, the court was made to consist to ten members, one being then added. By the act of July 23, 1866, when Mr. Johnson was president, and there was a vacancy, it was enacted "that no vacancy in the office of associate justice *Page 60 
shall be filled by appointment until the number of associates shall be reduced to six, and thereafter the Supreme Court shall consist of a chief justice and six associate justices." By the act of April 10, 1869, after the accession of Gen. Grant, it was enacted that the court should consist of a chief justice and eight associates, the original number; but this act did not take effect until December, 1869. Hepburn v. Griswold was argued in 1867 and 1868 before the chief justice and seven associates, the lowest number to which the court was reduced, who were, as the law then stood, a full court, and the decision was agreed upon on the 27th November, 1869, before the act ordering another judge took effect. Justice GRIER was in the court at that time, and also when the opinion was read on 29th January, 1870, and agreed to it, although he resigned on February 1st, 1870, and the opinion was not actually handed down until the seventh of February. So that the case was argued before a full bench and the decision received the concurrence of five of the eight judges and a majority of the present number of judges. The resignation of Justice GRIER and the additional judge created by the act of April 10, 1869, rendered two appointments necessary. (See 12 Wal., 528, note; 8 id., 626.)
Neither was there any ground for a want of confidence in the finality of the decision from a lack of full consideration by the court. The report states that it was twice argued, and that the same question had been at different times argued in five different cases, and the names of counsel are given, which embrace a large number of the most able lawyers in the country. A long time was taken for deliberation by the court, and the opinions are elaborate, exhaustive and convincing upon the question.
To support the same suggestion we were also referred to the fact that the courts of fifteen States, including this State, had decided in favor of the constitutionality of the act, but it will be remembered that these decisions were made during the war and in almost every instance by a divided court, and under the pressure of the notion that in some way (which has *Page 61 
never been satisfactorily demonstrated) the legal tender act was a necessary means of putting down the rebellion, and that patriotism demanded the exercise of the utmost ingenuity on the part of the courts to find a legal warrant for the exercise of the power. Decisions influenced to any extent by such considerations are often excusable, if not commendable; but they are not usually regarded as the safest judicial precedents in settling constitutional principles. It was generally supposed that the question would be reviewed under circumstances better calculated to secure clam and deliberate consideration.
Chief Justice CHASE, in Hepburn v. Griswold, very justly says: "It is not surprising that amid the tumult of the late civil war, and under the influence of apprehensions for the safety of the republic, almost universal different views, never before entertained by American statesmen or jurists, were adopted by many. The time was not favorable to considerate reflection upon constitutional limits of legislative or executive authority."
I cannot therefore concur in the views of the appellant's counsel that there was any legitimate reason for supposing that the decision in Hepburn v. Griswold should not be confided in as a finality, or that it would be reviewed by the same court, or, if reviewed, would be overruled. It was, in fact, overruled by the votes of the three judges who voted in the minority upon the first decision, and the votes of the two new appointees, neither of the majority then in the court having changed his opinion. The power to reverse its own decisions is conceded to every court; and it is the duty of courts sometimes to exercise the power, although the chief justice asserts that its exercise in that case was unprecedented in that court. The last decision is legally binding, but its moral weight is equaled by the decision of five other judges of the same court, sustained, in my judgment, by the clear weight of argument, so that, instead of settling the question for all future time, as claimed by the counsel for the appellants, this decision has only established a precedent which the *Page 62 
legal judgment of the country may demand shall be followed, for the purpose of overthrowing it. It is not our province in this case to pass upon the merits of the question, nor to criticise the reasons put forward for overruling the first decision. It is sufficient for us that those reasons commended themselves to the judgment and conscience of those who adopted them; and if they have not been fully appreciated by the public, it may be attributed to a patriotic sensitiveness on the part of the people for the character of the highest court in the government, upon whose perfect integrity and independence constitutional liberty largely depends.
We think this contract had reference to the decision first made, and that there is nothing in the circumstances alluded to, or in the merits of the question, from which we have a right to infer that the parties contemplated any further litigation.
The judgment must be affirmed.
ALLEN, GROVER and PECKHAM, JJ., concur.
FOLGER and ANDREWS, JJ., concur in result.
RAPALLO, J., not voting.
Judgment affirmed.