M. & E. SOLOMON TOBACCO CO. v. COHEN et al.

(Supreme Court, Appellate Division, First Department.   June 10, 1904.)

1. CONTRACTS—CONSTRUCTION—SALE OF TOBACCO IN BOND—PAYMENT OF DUTY
   —REFUND.
    A "bought and sold note" for the sale, at a stated price, of tobacco in
    bond, provided for the delivery of all the tobacco and payment therefor
    within five months, and contained a stipulation that the buyer should
    pay the duty, expressed in the following language: "Terms Duty Cash
    70c. if appraised at less, difference to be allowed."   The tobacco was
    appraised in the hands of the sellers, and they paid the duty, the buyer
    advancing the money.   Thereafter the sellers sued and recovered a por-
    tion of the duty paid, on the ground that the appraisement was illegal.
    The buyer paid no portion of the expenses of this action.   Held, that the
    appraisement contemplated by the contract was that to be made by the
    collector of customs, and was not the final determination of the court
    as to the amount of the duty, so that the buyer was not entitled to re-
    cover of the seller the amount refunded to it as having been illegally
    exacted.

Appeal from Trial Term, New York County.

Action by the M. & E. Solomon Tobacco Company against Benja-
min F. Cohen and others.   From a judgment for plaintiff, defendants
appeal.   Reversed.

The action is brought to recover a sum of money refunded by the United
States government to the defendants for duties illegally exacted upon an im-
portation of tobacco.   The complaint is in two counts.   The first is upon an
express agreement alleged to have been made, "that, in addition to the price
of the said tobacco, the customs duties thereon on the importation thereof
into the United States of America were to be paid by the plaintiff to said
firm; that the said firm should endeavor to have the said customs duties
assessed at the lawful amount; that, in case the appraisal of said customs
duties should be excessive, the said firm should protest against the levying
thereof, and take such proceedings as should be necessary for the recovery
from the government of the United States of America of such excessive cus-
toms duties; that the difference between the amount of customs duties paid
by the plaintiff to the said firm and the amount of the appraisement as finally
made was to be repaid by the said firm to the plaintiff; that, relying upon
the said agreement, the plaintiff paid to the said firm the price of said to-
bacco, and, in addition thereto, paid as customs duties thereon to the said
firm the sum of sixty-one cents per pound."   The second count in the com-
plaint is for money had and received to the plaintiff's use.   The answer ad-
mits the sale to the plaintiff, the payment by the vendors to the government
of duty at the rate of 61 cents per pound, and denies the other allegations
of the complaint.   The nature of the action and the questions involved may
be briefly stated.   The defendants, on the 10th of June, 1890, sold to the
plaintiff, in the city of New York, 37 bales of Sumatra tobacco while in bond,
under a written contract in the form of a broker's bought and sold note, of
which the following is a copy:

"New York, June 10, 90.

"Sold to M. & E. Solomon Tob. Co.
"For account of S. Auerbach & Co.
"Terms Duty Cash 70c. if appraised at less Diffce to be allowed—$5000
4 & 5 mos—Balance less Discount for unexpired term—All to be taken in
5 mo.
"37 Bales Deli.                                   My K. S. L. I.
          "At $2.25.
"Examined and accepted
     "Maurice Eller & Son,
          "Brokers."

88 N.Y.S.—41

On June 12, 1890—two days after the sale was made—the 37 bales were appraised by the customs collector as dutiable at 61 cents per pound. On June 13, 1890, the defendants invoiced the 37 bales to the plaintiff at $2.16 a pound, thereby deducting 9 cents a pound from the price, which was the difference between the amount of the duty as estimated in the contract and the amount determined by the collector. On June 17, 1890, the plaintiff, in performance of the contract, delivered to the defendants two promissory notes for $2,500 each—one dated June 13, 1890, payable four months after date; and the other dated June 17, 1890, payable five months after date—and subsequently, and prior to February 1, 1891, withdrew all the tobacco, and paid for it at the rate of $2.16 per pound, paying the amount of the duty to the defendants in cash on each delivery as it was made. After the appraisement of the tobacco and the liquidating of the duty at 61 cents per pound, the defendants filed a protest with the collector of customs, claiming that the method of the appraisement was unlawful, and that the duty was unlawfully liquidated, and that an excessive amount of duty had been exacted; and subsequently, in April, 1893, the Circuit Court of Appeals of the United States decided that the collector erred in the manner of appraising the tobacco and liquidating the duty, and the United States Treasury Department thereafter, and on or about January 1, 1900, refunded to the defendants the excess of the duty paid. It is to recover this amount, less the sum paid for obtaining the refund, that this action is brought. Upon the facts the learned trial judge directed judgment for the plaintiff, and from such judgment the defendants appeal.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

B. F. Einstein, for appellants.
Abraham Benedict, for respondent.

O'BRIEN, J. The disputed question was whether the provision of the bought and sold note, "Terms Duty Cash 70c. if appraised at less Diffce. to be allowed," justified the construction that the eventual and legal rate of duty fixed by the government was to be deducted from the arbitrary and experimental rate of 70 cents per pound fixed at the time of the sale, in order to ascertain the "difference to be allowed," or whether the original and unlawful rate fixed by the collector on June 13th of 61 cents per pound concluded the parties. The learned trial judge decided that "the contract provides substantially that the difference between the unlawful duty and the sum arbitrarily fixed in the contract shall be refunded to the purchaser," which was, in effect, a determination that the contract did not contemplate as final the appraisement to be made by the collector, but contemplated the lawful duty as it might be ultimately assessed. Differently expressed, therefore, the question for our determination is whether, under this contract, the rights of the parties were fixed by the appraisement made by the collector in June, 1890, or whether the right of the plaintiff to a refund of duties paid continued until, by a decision of the courts, the amount lawfully payable was determined.

It will be noticed, in passing, that the plaintiff was not entirely certain that under the terms of the bought and sold note its rights to have allowed it a rebate of duties paid continued after the appraisement by the collector. We say the plaintiff was not entirely certain, because, instead of relying upon the language of the bought and sold note, the first count of the complaint alleged an express agreement whereby the defendants undertook and agreed, for plaintiff's benefit,

to file the protest, and to appeal to the courts, and, if successful, to pay over to it whatever might as the result of the litigation be obtained. This, though not controlling, is indicative of the construction which the plaintiff first placed upon the language of the bought and sold note—a construction entirely different from that for which it now contends. No attempt was made on the trial to prove any such express agreement, the plaintiff falling back on the terms of the bought and sold note. Upon the trial, therefore, both parties stood upon the construction to be given to the written contract embodied in the bought and sold note; and the court, reading it in the light of the surrounding circumstances, placed that construction upon it which would conform it to the presumed intention and understanding of the parties. We are constrained to adopt the same method, and to keep in mind the rule that "in the construction of contracts it is the duty of the court to put itself as near as may be in the situation of the parties, and from a consideration of the surrounding circumstances and the occasion and apparent object of the parties determine therefrom the meaning and intent of the language employed in framing their agreement." Smith v. Kerr, 108 N. Y. 31, 15 N. E. 70, 2 Am. St. Rep. 362. The question presented is a close one, the result depending, as it does, upon whether we view the contract as providing that the plaintiff was to pay for the tobacco, within the five months stipulated, an amount which included the sum fixed by the collector upon his appraisal to be made at the time, as the duty to be paid, or as providing that the plaintiff was to pay an amount which included the absolute legal duty that could be exacted, and that the plaintiff, upon its appearing subsequently that the duty had been erroneously assessed by the collector, could recover of the defendants money refunded to them by the government. This latter view would undoubtedly prevail if the understanding was that the plaintiff should purchase the tobacco at a price named, and, in addition, should pay the duty thereupon, and thus that the tobacco was sold subject to the payment of the duty which was paid by the plaintiff as such, exclusive of the price named by the defendants. In that case the money paid to the government as duty would be the money of the plaintiff. The contract, however, does not so provide, but instead names a price of $2.25 per pound for the tobacco, which price was calculated as near as could be without an actual appraisement; and it further provides for a deduction from this price if the appraisal, when made, was less. The duty was thus part of the consideration, and the plaintiffs was by the contract bound to accept delivery and pay for the tobacco within five months. Nothing was said about securing a decision of the courts, and it may very well be that the defendants were confident of obtaining a refund from the government, and that the right to do so was therefore reserved to them, and formed an element in determining the price named to the plaintiff. Whether this be so or not, it is as probable as is the suggestion that the price was fixed not alone with reference to the appraisement as made by the collector, but with reference to the lawful duty as finally determined by the court.

In addition to the contract, some evidence was admitted as to the conditions existing when it was made, from which it would appear

that the tobacco had recently been imported and was in bond, and had not yet been appraised by the customs officials; and that the parties, from their experience and knowledge of the quality of the tobacco and the methods adopted by the customs officials, judged that the appraisal would result in an average duty of 70 cents per pound. This being the situation, the question presented is, what did they mean in using the language, "if appraised at less difference to be allowed"? The only appraisal that the law provided for was that to be made by the collector of customs; and we think, considering the fact that the notes were payable and all the tobacco was to be delivered and the contract performed within five months, that there is force in the suggestion that the appraisement contemplated was the one which should, during that period, be made, and that it would be a strained construction to hold that the parties intended to defer the performance and completion of the contract beyond the appraisement by the collector, and until the lawful duty was determined by the courts, which determination, if it was ever obtained, might, and, as here shown, actually did, involve. a delay of years. Nor do we think that there can be spelled out of the language employed any duty resting upon the defendants to take steps to obtain a further allowance from the government through the courts.

In this connection our attention is directed by the appellants to the cases of Woodruff v. Woodruff, 52 N. Y. 53, and Wadsworth v. Green, 1 Sandf. 78. In the former the defendant was indebted to the plaintiff upon a bond and mortgage executed prior to the legal tender act, and after that act was passed offered in payment legal tender notes, and, when the plaintiff insisted upon payment in gold coin, entered into a contract that the plaintiff should receive the legal tender notes, but that if at any time thereafter the Supreme Court of the United States determined that the act was unconstitutional, then payment should be made in gold coin. Thereafter the court decided the act unconstitutional, and an action was brought to recover the difference in value of the notes and coin, and a judgment was obtained against the defendant. Upon appeal it was held that, although subsequent decisions had reversed the one holding the legal tender act unconstitutional, the plaintiff was entitled to recover upon the agreement; the court saying:

"We think that this contract had reference to the decision first made, and that there is nothing in the circumstance alluded to, or in the merits of the question, from which we have a right to infer that the parties contemplated any further litigation."

And in the Wadsworth Case it was said:

"The sole question is whether * * * the agreement means an ultimate decision in a court of final and last resort or the decision of a competent tribunal on the subject. * * * It is sufficient for the plaintiff's purpose that there has been a judicial decision of a competent tribunal."

It is conceded that it was due solely to the defendant's protest and efforts subsequent to the appraisal by the collector that the fund was obtained over which this dispute has arisen. If it had been the intention of the parties that these steps should be taken after the sale

by the defendants solely for plaintiff's benefit, it would seemingly have been easy to express some such agreement in language similar to that employed by the plaintiff in the first count of the complaint, which alleged a clear and explicit agreement, which, however, upon the trial, the plaintiff abandoned, because unable to prove. As indicating the intention and understanding of the parties expressed in the bought and sold note, one of the most significant features is the fact that the contract in its terms was to be performed, and the plaintiff agreed to pay for the tobacco, within five months. As the only appraisement that could be made within that time was by the collector of customs, we think that the appraisement which the parties had in mind when they signed the contract was that to be made by the collector, which was the one provided by law. There was no obligation imposed upon the defendants by the terms of the contract to take any steps or to do anything further towards securing from the government another appraisement or a determination through the courts of the duty which could lawfully be imposed.

Another argument in the appellants' favor, we think, arises from the conduct of the parties. All the tobacco and the notes in payment having been delivered during the five months, both parties, so far as can be gathered from this record, regarded the transaction between them as finally closed. This inference is deduced from the fact that the plaintiff did nothing towards obtaining a review of the appraisement made by the collector, which was determinative. On the other hand, the defendants took active steps to review the appraisement; and, if they did not think it was for their own benefit, then we are driven to the conclusion that, without any obligation resting upon them to do so, and without the prospect of deriving any benefit therefrom, they filed the protest and conducted the proceedings which resulted in the creation of the fund over which this dispute has arisen.

We think, therefore, that the appellants are right in contending that there never was any appraisement contemplated other than the one made by the collector. The United States Circuit Court of Appeals held that the appraisement made was illegal because the method of making it was illegal; but that fact is not controlling, because the appraisement made by the collector was the one which we think the parties provided for in their contract, and which was therein fixed by them as the basis for determining the price of the tobacco, the contract making no provision for protesting against that appraisement or appealing from it, nor for the contingency of its being set aside.

Having reached the conclusion, therefore, that there was no provision in the contract that the defendants should protest against the appraisement, or take proceedings to recover excessive duty, or that the defendants were to refund to the plaintiff the difference between the duty which might ultimately be determined to be the lawful duty and the sum arbitrarily named in the contract, and that neither under the terms of the contract nor upon the theory of money had and received was the plaintiff entitled to recover the moneys which the defendants obtained from the government, the judgment in plaintiff

favor should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

INGRAHAM, McLAUGHLIN, and HATCH, JJ., concur.

PATTERSON, J. I concur on the specific ground that by the contract the parties intended no other appraisement than that to be made by the customs authorities, and upon which duty was to be paid before the goods could be withdrawn.