## GUARDIAN TRUST CO. OF NEW YORK v. PEABODY.

(Supreme Court, Appellate Division, First Department.   December 6, 1907.)

**1. GUARANTY—CONTRACT—CONSTRUCTION.**

While the contract of a guarantor should be fairly construed according to the reasonable rules for the interpretation of contracts, yet, when the subject of the contract is finally ascertained, he has the right to a strict construction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Guaranty, § 28.]

**2. SAME.**

Parties to a contract of guaranty can specify particularly the thing guaranteed, and when they have done this courts have no right to say that something else amounted to the same thing, and that what was done did not injure the guarantor, and thereby make a new contract on which to hold him liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Guaranty, § 28.]

**3. PRINCIPAL AND SURETY—DISCHARGE OF SURETY.**

Injury to a surety is not the test of his release, particularly when the contract of suretyship is specific.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Surety, § 135.]

**4. GUARANTY—CONSTRUCTION—DESCRIPTION OF NOTES GUARANTEED—PRINTED AND WRITTEN CLAUSES IN NOTES.**

By an agreement signed by plaintiff and a corporation and individuals interested in it, termed "subscribers," plaintiff agreed to make loans, not exceeding a specified amount, to the corporation, on its notes payable to its own order and indorsed by it, to mature within one year with privilege of renewal, secured by deposit of its capital stock, the corporation to make also certain cash deposits to form a sinking fund; and the subscribers guaranteed to plaintiff payment of any unpaid balance of the notes. Instead of the notes provided for, plaintiff took general collateral notes, payable to plaintiff's order, printed portions of which pledged the collateral for payment of the note and any other indebtedness of the corporation, and required, in case of depreciation, a payment or additional security, in default of which the note should become due, but which also contained, written into a blank, the words "subject to agreement," etc. Plaintiff loaned to the corporation, besides the amount agreed, additional sums, for part of which the same collateral was pledged, without reference to the agreement. *Held*, that the subscribers were not liable for an unpaid balance of the notes, as the notes given were not of the character and form prescribed by the agreement, even if the agreement be regarded as read into the notes by the written words referring to it, and as prevailing over the printed portions.

McLaughlin and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by the Guardian Trust Company of New York against Stephen Peabody. From a judgment for defendant, rendered on the report of a referee dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Henry D. Hotchkiss, for appellant.
H. Snowden Marshall, for respondent.

HOUGHTON, J.   Several men of whom the defendant was one were interested in the Yetman Transmitting Typewriter Company

which was in need of funds for the prosecution of its business. Negotiations were had with the plaintiff for the furnishing of such necessary money. These negotiations resulted in a written agreement, signed by the plaintiff, the typewriter company, and the individuals who were termed "Subscribers," which, after reciting that the typewriter company desired to secure a loan not exceeding $80,000 to be used as working capital, and to hypothecate all of its capital stock amounting to $500,000, par value, as collateral therefor, and that the plaintiff proposed to make such loan for the period of one year, with the privilege of renewal for an additional period of six months, and that the subscribers proposed to underwrite and guarantee the payment of the balance unpaid in proportion to the sums set opposite their names, provides, in substance, that the typewriter company should make, execute, and deliver to the plaintiff its negotiable promissory notes, and upon the delivery of the first of such notes all the collateral security should be deposited for such note and all subsequent ones; and, beginning with the discount of the first note, the typewriter company should deposit with the plaintiff $20 in cash for every machine sold by it, which deposit should form a sinking fund for the payment of interest on the notes and such part of the principal as it might become sufficient to pay; and that upon failure by the typewriter company to make such deposit the plaintiff might refuse to advance any more moneys, and declare all notes then held by it due and payable, and on failure of the company to pay such notes the plaintiff might sell the collateral and apply the proceeds thereto; and in case the notes were paid a portion of the collateral was to be retained by the plaintiff for its services, and a part delivered to the subscribers and the remainder to Charles E. Yetman. Each subscriber guaranteed to the plaintiff the payment of such amount of the unpaid balance of the notes as his subscription bore to the whole.

The provision that the typewriter company should give its negotiable promissory notes was that they should be as provided in paragraph 3 of the agreement, which reads as follows:

"3. As required and called for by the typewriter company, the trust company [plaintiff] agrees to lend the typewriter company upon its promissory notes, payable to its own order, and indorsed by it, such sums of money as the said typewriter company may require for working capital and other corporate purposes, not exceeding in the aggregate the sum of eighty thousand dollars. Said notes shall bear interest at the rate of six per cent. per annum, payable every three months, or so near thereto as possible, and all the notes shall mature within one year from the date of the first note. The typewriter company shall have the privilege to renew such amounts as may remain unpaid at the end of said year for an additional period of six months."

On the second day after the execution of the agreement, the typewriter company presented the collateral, and the plaintiff loaned to it $10,000. Instead of taking the note of the typewriter company payable to its own order and indorsed by it, the plaintiff took a general collateral note, payable to itself (Guardian Trust Company), filled in as to date, time of payment, amount and rate of interest, upon the usual printed blank, which printed portion pledged the collateral for payment of the note and any other indebtedness of the typewriter

company, and provided that, in case the collateral should depreciate, a payment should forthwith be made, or additional security furnished, in default of which the note should forthwith become due. The blank in the printed note left for the description of the collateral was filled in as follows:

"5000 shares Yetman Typewriter Co., subject to agreement between Yetman Transmitting Typewriter Co. Guardian Trust Co. and several subscribers dated October 31, 1904."

Advancements were made from time to time and similar notes taken, until the plaintiff had advanced to the typewriter company the full $80,000. The plaintiff also loaned the typewriter company $23,000, in addition for $10,000 of which the same collateral was pledged without reference, however to the agreement of October 31, 1904. The typewriter company paid only a small portion of the $80,000, and defendant's proportion of the unpaid balance was $9,828.27.

This action is brought to recover such latter sum, and the trial before the referee resulted in a dismissal of the complaint upon the merits, and from such judgment the plaintiff appeals. Counsel for plaintiff very frankly concedes that the plaintiff has no claim against the sureties if the agreement of October 31st, by proper and necessary interpretation, provides for the giving by the typewriter company of a negotiable promissory note for each loan obtained. The position of the plaintiff is that although a negotiable promissory note is nominated in the agreement, still taking the agreement as a whole, in view of its provisions for renewal of the notes and the providing of a sinking fund for their payment, negotiable notes were not in fact provided for, and that the words "subject to agreement," written into the blank of the note which was taken, relate to the terms of payment of the note as well as to the pledging of the collateral, and that the agreement itself is thus read into the note, and that this part of the agreement being written the balance of the note which was printed should be disregarded, on the principle that where written and printed portions of a contract are inconsistent the writing should prevail, and that making the plaintiff the payee of the notes was so immaterial a variation as to do no harm. In our opinion the contract of October 31st is too specific as to the form and character of the note to be taken to permit us to relieve the plaintiff from its unfortunate oversight in not taking the note which the defendant and his associates guaranteed the payment of.

The agreement appears to have been very carefully drawn, and each provision is separately numbered. The first subdivision provides that the typewriter company shall give its negotiable promissory notes, and specifically refers to the third subdivision which specifies their form. It was notes of the prescribed character and form which the defendant and his associates guaranteed. Their guaranty was not a general one to pay the indebtedness of the typewriter company incurred with plaintiff in any form to the extent of $80,000. Nor did they guarantee the payment of a note which should contain in the body of it all of the agreement which they entered into, as would be

the case if the words "subject to agreement" were read into the note and the printed part of the one taken eliminated.

While the contract of a guarantor should be fairly construed according to the reasonable rules for the interpretation of contracts, when the subject of the contract is finally ascertained, he has the right to a strict construction. Parties to a contract of guaranty can specify particularly the thing guaranteed, and when they have done this courts have no right to say that something else amounted to the same thing, and that what was done did not hurt the guarantor, and thereby make a new contract upon which to hold him liable.

There is some difference of opinion in this court as to whether the words "subject to agreement" relate to the terms of payment of the note as well as to the collateral pledged. But assuming that they relate to the terms of payment, then the effect is to read the contract into the note, and when we do that we do not have a note such as the defendant guaranteed the payment of. Such a note would be subject to construction and possible dispute. The defendant contracted as to one not open to construction, the precise form of which he specified. It is difficult to see how the defendant was injured. All of the notes fell due on the same day, and on default all would become past due paper. It is possible that the defendant and his associates, if they learned that the typewriter company was not paying in the $20 on the sale of each machine, might have gone to the plaintiff, and asked it to declare the notes due for that reason, and paid them, and thus have become entitled to possession of the notes with the collateral. It is true that the notes would have then been past-due paper, but they would not have so appeared upon their face. Being payable to the typewriter company, they would not have required the plaintiff's indorsement or transfer by it, as did the notes given. Injury, however, is not the test of release of a surety, particularly when the contract of suretyship is specific. If the notes stand in the form taken by the plaintiff, without modification or elimination by the terms of the agreement, of course they do not conform to the contract of guaranty. They require for transfer the indorsement of the plaintiff, and, in express terms, subject the collateral to any indebtedness of the typewriter company beyond the $80,000 stipulated, and give the right to demand additional security in case of depreciation, and to declare the same due in case it is not furnished.

We are impressed with the equitable character of the plaintiff's claim, for the defendant, together with his associates, have obtained desired aid to their corporation at plaintiff's expense. In our view of the law, however, we see no way to relieve the plaintiff from the consequence of its oversight in not taking the notes agreed upon, or its possible overcaution in taking a note which overreached the agreement.

The judgment must be affirmed, with costs.

PATTERSON, P. J., and LAMBERT, J., concur.

McLAUGHLIN, J. (dissenting). I am unable to agree with the other members of the court that the judgment appealed from should be affirmed. I am of the opinion that the written agreement signed by

the plaintiff, the typewriter company, and the subscribers should be read into the notes, and as I understand the opinion of Mr. Justice HOUGHTON he has reached the same conclusion. If this be done, then the words "subject to agreement," etc., relate not only to the deposit of shares of stock, but to every provision of the notes. The written words in the notes, referring to the agreement, were entirely unpunctuated, and were in the only available space in the printed form used, and it would be a forced and ungrammatical construction to hold that reference might be made to the agreement as regards the deposit of shares, but for no other purpose. If it be true, as the referee seemed to think, that the words "subject to agreement," etc., were susceptible of different meanings, then he was correct in admitting parol evidence to show the meaning in which the words were used. Kitching v. Brown, 180 N. Y. 414, 73 N. E. 241, 70 L. R. A. 742; Evansville National Bank v. Kaufmann, 93 N. Y. 273, 45 Am. Rep. 204; Springsteen v. Samson, 32 N. Y. 703; Solomon Tobacco Co. v. Cohen, 95 App. Div. 297, 88 N. Y. Supp. 641. The evidence thus admitted showed beyond question that the intention of the parties was to make every provision in the notes subject to the agreement, and that these words were inserted for that purpose. If the agreement be thus read into the notes for the purpose stated, then the question presented, by applying well-settled rules, is not difficult of solution. Where a printed form of contract is used, written words therein will prevail over the printed words, if there be provisions which are repugnant, irreconcilable, or inconsistent. Kratzenstein v. Western Assur. Co., 116 N. Y. 54, 22 N. E. 221, 5 L. R. A. 799; Clark v. Woodruff, 83 N. Y. 518; Collins v. Knuth, 51 App. Div. 188, 64 N. Y. Supp. 549. As was said in Clark v. Woodruff, supra:

"The language of printed blanks is easily assumed to be appropriate, without careful examination, while the written words more safely and more nearly indicate the intention of the contracting parties."

In the present case, when the first loan was made, no form of note had been prepared, so that the printed form of collateral note used by the trust company was adopted, and the words "subject to agreement," etc., written in. If I am correct in the conclusion that these words had the effect of incorporating in the notes the entire agreement, then the printed provisions of the notes, repugnant to or inconsistent with the terms of the agreement, may be disregarded. The effect of this is not, as the respondent contends, to make the notes payable to the typewriter company and indorsed by it, but to identify them as those given under the agreement, though not in the exact form provided. But it is suggested that, if the agreement be read into the notes in the manner and with the effect indicated, the result would be that they would be nonnegotiable, and that the agreement provided for negotiable notes. It is true that in the first paragraph of the agreement the typewriter company agreed to make "its negotiable promissory notes as provided in paragraph 3 of this agreement," but it is evident from paragraph 3 and the other provisions of the agreement that the notes were to be nonnegotiable. Paragraph 3 does not refer to the notes as negotiable, and provides that the typewriter company might renew such amounts

as remained unpaid at the end of the year for an additional six months. Paragraph 4 provides that the typewriter company should deposit with the trust company $20 for each machine sold by it, to be kept in a special sinking fund account held as security for the notes. When and as this fund amounted to $2,000, it was to be applied to the payment of interest then due on all the notes and the remainder to the principal of the earliest note then unpaid. If these deposits were not made, the trust company might declare all the notes to be then due, and demand and receive payment. These provisions, and some others, indicate that negotiable notes were not contemplated in the agreement. In Roblee v. Union Stockyards Nat. Bank, 69 Neb. 180, 95 N. W. 61, the Supreme Court of Nebraska had occasion to pass upon the negotiability of a note under somewhat similar conditions. In that case the note was secured by a mortgage of cows, and one of the provisions was that the mortgagor should deliver the milk from the cows to the mortgagee, who was to apply the proceeds of the butter derived therefrom to the payment of the note. The court held that this rendered the note nonnegotiable, and the reference in that note to the mortgage was by no means as clear as the reference to the agreement in the present case. Here, it is conceded, as it must be, that the trust company could not have negotiated the notes, even if they had been in the precise form provided in the agreement. It might have declared them due, and, after payment by the guarantors, have turned them over to them.

If it be true that the agreement should be read into the notes and that rendered them nonnegotiable, then but a single question remains as to whether the fact that the notes were made payable to the trust company instead of the typewriter company and indorsed by it was such a variance as to discharge the guarantors. It is unquestionably true that contract of a guarantor is strictissimi juris, and that a variance is not to be tested by the effect on the guarantor. It must, however, be something more than form. It must go to the substance of the contract, either as to the guarantor or the principal. A variance which does not alter the obligation of the principal, or increase the liability of the guarantor, will not discharge the latter. Western New York Life Ins. Co. v. Clinton, 66 N. Y. 326; Kingsbury v. Westfall, 61 N. Y. 356; American Copper Co. v. Lowther, 38 App. Div. 134, 56 N. Y. Supp. 538, affirmed 165 N. Y. 625, 59 N. E. 1118; Standard Underground Cable Co. v. Stone, 35 App. Div. 62, 54 N. Y. Supp. 383.

In American Copper Co. v. Lowther, supra, the plaintiff agreed to advance $25,000 in cash to the Fairfield Copper Company—the latter giving a bond, payment of which was guaranteed by the defendants. One Wood had theretofore advanced $3,000 to the copper company in anticipation of this loan. He was indebted to the plaintiff in an amount in excess of this sum, and with the consent of the copper company the plaintiff credited him with $3,000 on his debt to it as part of the $25,000 advanced. It was held that, although the terms of the guaranty agreement and the recitals in the bond provided that the whole amount was to be advanced in cash, the guarantors were not released. In disposing of the question, the court said:

"If the Fairfield Company had received from plaintiff on November 26, 1894, its check for $3,000, which that company had at once delivered to Wood in payment of his debt, even a guarantor would admit that the transaction was an advance of money such as would satisfy this contract. But this was the same thing in substance. It was not even in point of fact a modification of the agreement between the principal parties, but the contract they made was carried out. * * * We think, therefore, that there was no modification of the contract of the principals, and that the defendants as guarantors are liable."

The variance of the case now before us as to form of the notes is equally inconsequential. Whether the typewriter company made its notes payable to its own order and indorsed them, or whether it made them payable to the trust company, is not of the slightest importance, because its obligation and that of the guarantors was precisely the same. Madison Square Bank v. Pierce, 137 N. Y. 444, 33 N. E. 557, 20 L. R. A. 335, 33 Am. St. Rep. 751. In legal effect, therefore, there was no modification of the agreement; the variance was in a mere matter of form. It is true the notes, as made, would require the indorsement of the trust company to transfer them, while if they had been made payable to the typewriter company and indorsed by it they could be given to the guarantors without further indorsement. But the objection that the trust company, under such circumstances, might have refused to indorse them "without recourse" or otherwise, so as to transfer title to the guarantors, is of no weight whatever. If they had been in the other form the trust company might equally as well have refused to give them up. The obligation assumed by the typewriter company is precisely the same in either case, and it is that obligation which the guarantors undertook to guarantee. As to that the contract has not been varied in the slightest degree. This being so, the guarantors are liable. Their liability has neither been increased nor diminished in any particular. They are in precisely the same position they would have been if the notes had been payable to and indorsed by their principal.

In conclusion it is to be observed that whether the words "subject to agreement," etc, relate, as I think they do, to every provision of the notes, they certainly relate to the deposit of the shares of stock—as to this we are all agreed—which means that such shares were to be held in accordance with the agreement, and subject to it. This disposes of one of the contentions of the respondent, and one of the objections to the form of the notes stated in the prevailing opinion, which is that, by the subsequent printed provisions of the notes, the shares could be held as security for the loans made by the trust company in excess of $80,000. The agreement specifically provides that the shares should be deposited to secure loans not in excess of $80,000. The claim then that the trust company could hold these shares as security for loans by it to the typewriter company in excess of that amount, aggregating over $20,000, is wholly unfounded. Not more than $80,000 could be advanced under the agreement, it is true, but there is no provision that further agreements for further advances might not be made, nor can one be implied. If the typewriter company had borrowed the further amounts from other parties, pledging its equities in the stock as security for payment, no one would seri-

ously contend that this constituted a violation of the agreement, and, if it could borrow from third parties, it could borrow from the trust company.

The judgment appealed from should be reversed, and a new trial ordered before another referee, with costs to appellant to abide event.

LAUGHLIN, J., concurs.

Henry D. Hotchkiss, for appellant.
H. Snowden Marshall, for respondents.

Judgment affirmed, with costs.