[No. 21821. Department One. January 9, 1930.]

HANSEN SERVICE, INCORPORATED, *Respondent*, v. J. H. LUNN, *Appellant*.[1]

*Carl J. Smith,* for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

MILLARD, J.—This is an action upon a contract of guaranty. Defendant's demurrer to the complaint was overruled, and his challenge to the sufficiency of the evi-

[1]Reported in 283 Pac. 695.

dence at the close of plaintiff's case was denied. The cause was tried to the court without a jury. Findings of fact and conclusions of law were made and a judgment entered in favor of the plaintiff. The defendant appeals.

R. B. Walder, a son-in-law of appellant Lunn, was engaged under the trade name of R. B. Walder & Company in the business of selling radio equipment and accessories. On December 5, 1927, the respondent corporation, from whom Walder had been buying goods on open account, refused to extend further credit to Walder without security. Appellant paid to the respondent on December 5, 1927, fifteen hundred dollars on Walder's account, and entered into the following guaranty contract on the same date:

"WHEREAS, The Hansen Service, Inc., a corporation, operating Stewart Warner Products Service Station of Seattle, Washington, has heretofore and is now extending credit to R. B. Walder & Company, on merchandise sold and delivered to the said R. B. Walder and Company, and

"WHEREAS, the said R. B. Walder & Company is now indebted to the said Hansen Service, Inc., a corporation on account of said merchandise, and

"WHEREAS, the said R. B. Walder & Company and the undersigned desire to purchase other merchandise from time to time of said Hansen Service, Inc., and desire to have credit for such merchandise as heretofore, and

"WHEREAS, the said Hansen Service, Inc., is willing to continue to sell merchandise to the said R. B. Walder & Company provided payment for said merchandise is secured, the undersigned does hereby agree for and in consideration of such credit as may be extended by Hansen Service, Inc., to R. B. Walder & Company in the future to guarantee payment to said Hansen Service, Inc., of all sums which may hereafter become due and payable to the said Hansen Service, Inc., for merchandise sold and delivered to the said R. B. Walder & Company. This guarantee is to be a continuous

184

guarantee, and shall be in full force and effect until written notice of its termination is given to the said Hansen Service, Inc.

"It is further understood and agreed that this guarantee is in addition to and is not affected by any other security now held or hereafter to be held by the said Hansen Service, Inc., for the payment of any said indebtedness.

"IN WITNESS WHEREOF, the undersigned has hereunto set his hand and seal this 5th day of December, 1927.

"Witness:                              John H. Lunn,
"R. B. Walder."

Respondent concedes that all goods delivered by it to R. B. Walder & Company subsequent to December 5, 1927, were sold under the terms of a consignment contract between Walder & Company and the respondent. No goods were sold on open account to Walder & Company as was done prior to December 5, 1927. The consignment contract reads as follows:

"Seattle, Washington, December 5, 1927.

"CONSIGNMENT CONTRACT

"This contract, executed in triplicate, in the city of Seattle, state of Washington, on this the 5th day of December, 1927, by and between HANSEN SERVICE, INC., operating Stewart Warner Products Service Station, a corporation, hereinafter designated the consignor, and R. B. Walder & Co., or their assigns, of the city of Seattle, county of King, state of Washington, hereinafter designated as the consignee, WITNESSETH:

"That the consignor has agreed and does hereby agree to consign and deliver to the consignee, and subject to the approval of the credit department of the consignor, for sale by the consignee for the use and benefit of the consignor, upon and in accordance with the terms hereinafter set down, Stewart Warner Radio, equipment and essential accessories, to wit:

"(1st) The consignor shall deliver to the consignee sufficient radio equipment for a reasonable display and working stock.

"(2d) The cost of delivery and handling shall be borne by the consignee.

"(3d) All goods consigned hereunder shall be sold by the consignee at prices not less than the suggested list prices furnished from time to time by the consignor to the consignee.

"(4th) The compensation of the consignee for selling said goods shall consist of the trade discount which is recommended by the manufacturer of the various lines of equipment which may be consigned under this agreement.

"(5th) As sales are made by the consignee of Stewart Warner Radio, equipment and essential accessories, the consignee shall immediately pay to the consignor in full for that part of the consignor's property which has been sold at full list prices less the commission allowed the consignee for selling. It is further agreed that there shall be an accounting on the first day of each calendar month, at which time the consignee shall furnish the consignor with an actual inventory account of all radio equipment and accessories on hand, which are the property of the consignor, and shall at that time pay over to the consignor any difference between stock then on hand and the amount of the consignor's statement as of that date. All invoices shall carry the following notation: 'This shipment and invoice represents sales from our consigned stock of merchandise of the identical description.' 'The merchandise listed above becomes part of the original consigned stock until sold.'

"(6th) The consignee shall keep books of account showing all his transactions hereunder, which books shall at all times during business hours be open to inspection of the duly accredited representative of the consignor.

"(7th) Consignee shall keep all said consigned goods in a safe, clean and proper place, and shall keep them insured with an insurance company approved by the consignor, for the benefit of the consignor, the expense of such insurance to be borne by the consignee and the consignor is to be named as the assured in the policy covering same.

"(8th) Consignor may at any time, without notice to consignee, take possession of any goods shipped to the consignee hereunder.

"(9th) The term of this contract shall be from the date hereof and ending December _____, 1928; but the consignor reserves the right to terminate the contract at any time upon written notice thereof sent by mail to the consignee at his said place of business at Seattle, Wash.

"(10th) Should the consignee's financial responsibility become unsatisfactory to the consignor at any time during the term of this contract, or should the consignee fail to make any payments as provided in this contract, the consignor shall have the right forthwith to terminate this contract without further notice.

"(11th) This agreement does not become effective until signed by an officer of Hansen Service, Inc., at Seattle, Washington.

"IN WITNESS WHEREOF, said parties have hereunto set their respective names, in triplicate, the day and year first above set down.

"R. B. WALDER & Co.          HANSEN SERVICE, INC.,
"By R. B. Walder                 By W. M. Hansen
"1509 Fifth avenue, Seattle, Washington."

From December 5 to December 18, 1927, respondent supplied merchandise to Walder & Company under the foregoing consignment contract. On December 18, 1927, all of the goods that Walder & Company had on hand were reclaimed by the respondent, and the account of Walder & Company credited therewith. When Walder's account had been credited with cash payments and returned goods, $869.46 was due to the respondent, who commenced this action to recover same from the appellant under the terms of the guaranty contract.

The court found that the respondent, as a condition precedent to furnishing further merchandise to Walder & Company, required security for the payment therefor, and that, on December 5, 1927, in consideration of

respondent agreeing to furnish additional merchandise to Walder & Company, the appellant made the written guaranty agreement above quoted. The court further found:

"That the plaintiff, acting and relying upon said guaranty agreement, furnished and delivered to the said R. B. Walder & Company, additional merchandise, and in pursuance of the understanding and agreement made prior to the execution of said guaranty agreement, and as additional security for the payment of said merchandise, the plaintiff delivered said merchandise to the said R. B. Walder & Company, upon consignment, giving said R. B. Walder & Company the right to sell said merchandise and thereafter to make a monthly accounting and settlement for all merchandise sold."

Appellant contends that he agreed to pay only any balance due for goods sold and delivered, and that his contract of guaranty does not provide that he guarantee payment for goods delivered to Walder & Company as a bailment.

Respondent argues that the consignment agreement constituted a "sale" by the respondent to Walder & Company, and was not in fact a strict "consignment." It is urged that appellant made the guaranty agreement on the same day and as a part of the same transaction as the consignment contract entered into by respondent and Walder; that appellant guaranteed payment of the indebtedness for goods to be sold and that it is not material as to the form or method of selling; that there was positive evidence that the appellant guarantor was informed and knew that all of the goods to be furnished to Walder & Company were to be sold under the so-called consignment agreement. In support of its argument, respondent analyzes the consignment contract as follows:

The cost of delivery and handling is to be borne by

Walder & Company. The title to the goods is not reserved in the respondent. The consignee is given the right to sell at any price not less than the suggested list prices. The respondent retains no ownership of the moneys received in payment of the goods sold by Walder & Company, and the latter agreed to pay to respondent the full list price less the commission or discount allowed to Walder. Walder agreed to make a monthly accounting and settlement by paying over to the respondent any difference between the stock on hand and the consignor's statement of goods delivered.

The evidence is conflicting as to whether appellant had knowledge of the consignment contract. That the respondent retained title in the goods delivered to Walder & Company, was admitted by Mr. Hansen of respondent corporation. Mr. Hansen testified:

"Q. You say, Mr. Hansen, that there were no goods sold to R. B. Walder & Company on and after the 5th of December, except that which was delivered on the consignment? A. On and after the 5th, I believe it was. Q. 5th of December, yes. In other words, you retained title to the goods did you not? A. We retained title to the goods. Q. And you could go in and take them out any time you desired to do so? A. Yes, under the agreement. . . . Q. And under that contract you consigned goods to him on and after the 5th of December, 1927? A. That is correct. Q. And as he sold them you paid him a certain commission or certain deduction? A. No. As he sold it, he was supposed, under that contract, to pay us the moneys received on the sale of merchandise, which payments were not made. Q. The goods were sold on the installment plan mostly, were they not? A. By Mr. Walder? Q. Yes, on contract. A. Some were sold for cash and some were sold on the installment plan, according to his own statement to me. Q. And under this contract he had the right to sell on the installment plan, on how much down? A. On any amount down that would influence anyone to be a safe proposition.

Q. Wasn't it in your opinion, Mr. Hansen? A. No, the merchandise was our property. Q. When they were sold on contract, weren't the contracts assigned to you? A. A few contracts were assigned to us. Q. They were made originally to R. B. Walder & Company and then assigned to you by Mr. Walder? A. *Then assigned to us by Mr. Walder.* Q. How many of those contracts, do you remember, were assigned to you? A. Two or three were assigned to us.''

The appellant received no consideration for guaranteeing the payment of the indebtedness of Walder & Company. That the contract of a guarantor without compensation will be strictly construed, needs no sustaining citation of authority.

We have no quarrel with the rule for which respondent contends, that the terms of the guaranty must be given a reasonable construction. The views we express in this opinion are not out of harmony with the authority quoted as follows by respondent:

''The rule that a guarantor is entitled to have his undertaking strictly construed does not mean that there should be any strict technical accuracy, but the guaranty should receive a liberal, fair and reasonable interpretation in furtherance of its spirit and in order to attain the object designed. *And when, by the application of the legal rules of construction, the intent of the parties to impose upon the guarantor certain liabilities has been ascertained, the parties are bound thereby,* and the language employed in the instrument should not be given an unfair and strained interpretation, in order to restrict or diminish the guarantor's obligation; nor should it be extended beyond its natural import in order to enlarge his obligation.'' 28 C. J., p. 936, § 81. (Italics are ours.)

What is the rule for ascertaining the intention of the parties? If the appellant agreed only to guarantee payment for goods *sold* to Walder & Company, did the delivery and sale of the merchandise to Walder &

Company under the consignment contract constitute a *sale?*

"In ascertaining the meaning of the language of a contract of guaranty the same rules of construction control as apply in the case of other contracts. In accordance with such rules the important question is, if possible, to determine and give effect to the intention of the parties as ascertained by a fair and reasonable interpretation of the terms used and the language employed in the contract of guaranty as read, when necessary, in the light of the attendant circumstances and the purposes for which the guaranty was made. *Where there is no ambiguity in the language of the contract, the instrument itself must be consulted in ascertaining the intention;* but if the language is ambiguous the situation of the parties and the circumstances surrounding the transaction may be looked at to ascertain the intention of the parties." 28 C. J., p. 930, § 76. (Italics are ours.)

"The contract of guaranty should be construed as a whole, and the intention of the parties collected from the entire instrument. Effect must be given to all of the language of the contract and a meaning and effect ascribed to each of the words and phrases used therein, if it can be done without violating its plain intent; and, where the guaranty is made up of two parts, one containing recitals and the other the obligation, language used incidentally in the recitals is not controlling over direct provisions in the obligatory part, and if the language of the condition of a guaranty clearly shows an intention to incur a liability not in terms referred to in the recitals, the intention so expressed must control." 28 C. J., p. 933, § 77.

The terms of the guaranty contract are clear and unambiguous. Appellant guaranteed payment for goods sold and delivered to Walder & Company if sold and delivered as they were sold and delivered prior to December 5, 1927; that is, on open account, respondent being the creditor and Walder & Company being the debtor. The recitals of the guaranty contract are to

the effect that the respondent is now extending credit to Walder & Company "on merchandise sold and delivered to the said R. B. Walder & Company;" and that he desires to "have credit for such merchandise as heretofore." That is, he desired credit for goods to be sold to him on open account. The respondent was willing to continue selling merchandise to Walder & Company as it had previously sold same "provided payment for said merchandise is secured."

If the appellant intended, or if the respondent desired, that the guaranty contract cover payment of goods sold on consignment, it would not have been difficult to incorporate in the instrument language embracing sales on consignment. As aptly stated in *Guardian Trust Co. v. Peabody,* 122 App. Div. 648, 107 N. Y. Supp. 515, 518:

"While the contract of a guarantor should be fairly construed according to the reasonable rules for the interpretation of contracts, when the subject of the contract is finally ascertained, he has the right to a strict construction. Parties to a contract of guaranty can specify particularly the thing guaranteed, and when they have done this courts have no right to say that something else amounted to the same thing, and that what was done did not hurt the guarantor, and thereby make a new contract upon which to hold him liable."

The liability of the guarantor cannot be enlarged beyond the strict intent of his contract. 12 R. C. L., pp. 1074-75, § 25.

Taking the instrument by its four corners, it reads that the appellant guaranteed payment to the respondent for goods *sold* by the respondent to Walder & Company. Respondent admits that no merchandise was sold to Walder & Company except on consignment, but insists that, under the consignment contract and the

facts in this case, such delivery on consignment constituted a sale.

True, the consignment contract does not recite that the title to the goods is not reserved in the respondent. It is not necessary, where the contract is one of consignment or agency, that a provision be incorporated in the contract expressly reserving title in the consignor, as title remains in the consignor as a matter of course. 23 R. C. L., p. 1217. However, Mr. Hansen, of respondent corporation, testified that title was reserved by respondent. The terms of the consignment contract between Walder & Company and the respondent were that the respondent was to furnish the consignee radio equipment to be sold at any price not less than the list price. Title was retained by respondent to all of the goods not sold by the consignee. One of the most important features of the contract was the reservation to the respondent of the right to reclaim the unsold goods. Such a provision is inconsistent with an absolute sale of property. Contracts for sale of the consigned goods on the deferred payment plan were to be assigned by Walder & Company to the respondent. Walder & Company was required to report all sales monthly, when an accounting was made and Walder credited with his commissions for goods sold. This was a contract of agency, not a contract of sale.

The judgment is reversed, and the cause remanded with instructions to dismiss.

MITCHELL, C. J., BEALS, PARKER, and TOLMAN, JJ., concur.