[No. 30766. Department One. March 3, 1949.]

HERBERT L. WEIHS, *Appellant,* v. GLENN WATSON *et al.,*
*Respondents.*[1]

*Geo. W. Young* and *Willard Zellmer,* for appellant.

*J. D. McCallum,* for respondents.

STEINERT, J.—Plaintiff brought suit to recover damages
for personal injuries and property loss resulting from a col-

[1] Reported in 203 P. (2d) 350.

lision between a motorcycle driven by the plaintiff and a truck operated by the minor son of the defendants. The action was tried before a jury. A verdict was returned in favor of the defendants, and judgment was entered thereon. Plaintiff appealed.

The accident out of which this action arose occurred within the intersection of Sixth and Park streets, in the city of Davenport, at about 1:30 p. m. on June 20, 1947.

Sixth street, extending in a northerly-southerly direction, is an arterial street having a width of sixty feet between property lines. Park street, extending from west to east, is a nonarterial street and is eighty feet in width from property line to property line. Merriam street, extending in an easterly-westerly direction, is the next street south of Park street, the distance between these two streets being two hundred fifteen feet. Cottonwood creek runs approximately east and west, parallel with, and a short distance south of, the south line of Park street. A bridge extends over the creek, on Sixth street, the north end of the bridge being six or seven feet from the south line of the intersection of Sixth and Park streets.

Sixth street, from Merriam street north to Park street, presents a steep down-hill grade, commencing with a grade of 14.6% at and near Merriam street and gradually decreasing to a grade of 3.4% at the Park street intersection. Park street itself is level, but along its south side, both east and west of its intersection with Sixth street, are trees growing on the north side of Cottonwood creek, obstructing the view of Sixth street from Park street and likewise the view of Park street from Sixth street.

At the time of the accident here involved, several motor vehicles were parked along the south side of Park street, west of Sixth street; among these vehicles was a large cattle truck which stood close to the stop sign situated at the southwest corner of the intersection. These vehicles further hindered visibility of eastbound traffic on Park street and northbound traffic on Sixth street, in relation to each other as they both approached the intersection.

On the occasion here in question, appellant, twenty-three years of age, was riding a motorcycle northwardly, down and along Sixth street, toward Park street. He was accompanied by a friend, who was also riding a motorcycle. At the same time, Dale Watson, minor son of the respondents, was driving respondents' cattle truck eastwardly along Park street toward Sixth street, at a speed of ten or fifteen miles an hour. The truck entered the intersection first, but it is admitted that it did so without stopping at the stop sign situated at the southwest corner of the intersection. Appellant observed the approaching truck as it entered the intersection, but, according to his testimony, he thought that it would either slow down or else stop and thus yield the right of way to him. The truck continued forward, however, and, when appellant realized that it would not yield the right of way, he applied his brake in an effort to bring his motorcycle to a stop. His efforts were unavailing, owing to the fact that his motorcycle began to "jump," then skidded down the arterial street, across the bridge, and collided with the right-hand side of the truck, which had by that time reached a point about midway in the easterly half of Sixth street. As a result of the collision, appellant sustained the injuries for which this action was brought. Appellant's companion, who was about fifty feet in the rear of appellant, was able to bring his motorcycle to a stop on the bridge and thus avoid a collision with the truck. Other facts, as the jury may have found them from the evidence, can be more appropriately stated when we come to consider the particular issues to which such additional facts relate.

Appellant's first assignment of error is based upon the refusal of the trial court to permit appellant to amend his complaint. The situation presented by this assignment came about in the following manner: Appellant had alleged in paragraph No. 5 of his complaint, filed March 5, 1948, that the negligence of respondents' son consisted, *among other things,* of (1) his failure to stop at the arterial stop sign before entering the intersection; (2) his failure to yield the right of way to appellant, who was approaching from the

right; and (3) his excessive speed, to wit a speed of thirty-five miles an hour. Pursuant to a motion by respondent and an order thereon made by the trial court, appellant on April 16, 1948, filed a bill of particulars wherein he stated that there were no acts of negligence on the part of respondents' son, other than those specified in paragraph No. 5 of the complaint.

On May 4, 1948, six days before the date of trial of the case, appellant served notice that on May 10th he would bring on for hearing a motion for trial amendment of his complaint, to the end that in the complaint the minor son should be described as one "who was at the times mentioned herein an incompetent and unlicensed person." On the calling of the case for trial on May 10th, appellant presented his motion, which, upon objection interposed by the respondents, was denied by the court.

Appellant's contention is that, had the amendment been allowed, he would have been able to establish that respondents' son was, at the time of the accident, sixteen years, one month, and twenty days of age; that he had neither applied for, nor been granted, a driver's license; and that he was incompetent to drive, because he had not taken the examination prescribed by Rem. Supp. 1943, § 6312-57 [P.P.C. § 289-29].

Resisting appellant's argument, respondents assert that the proposed amendment was so indefinite that respondents could not know the nature of the proof that appellant would offer in support of it, nor the nature of the proof that they in turn would have to produce in rebuttal. Respondents ask: Did the appellant thereby mean to plead (a) merely that respondents' son, who was driving the truck, had no license, or (b) that he not only had no license but also, being *under* the age of sixteen years, could not legally obtain one and, therefore, became incompetent, or (c) that he was incompetent on account of some physical or mental defect or inexperience as a driver?

To determine what appellant meant by the wording of the proposed amendment, a motion to make more definite

and certain would have been appropriate, or even necessary. To meet the issue raised by such amendment, a request for a continuance of the trial might also have been necessary, in order to prepare a proper defense.

The matter of trial amendments rests largely in the discretion of the trial judge, and his refusal to permit such an amendment will not be overturned except for manifest abuse of discretion. *Baxter v. Ford Motor Co.,* 179 Wash. 123, 35 P. (2d) 1090; *Hedrick v. Washington Nat. Ins. Co.,* 186 Wash. 263, 57 P. (2d) 1038; *Forbus v. Knight,* 24 Wn. (2d) 297, 163 P. (2d) 822.

The issues in this case involved simply the alleged negligence of respondents' son in failing to stop at the stop sign or to yield the right of way to appellant, and the alleged contributory negligence on the part of the appellant in driving his motorcycle at an excessive rate of speed under the existing conditions. The fact that the son did not have a license to drive the truck was immaterial upon these issues, for regardless of whether he had, or did not have, a license, the fact of his negligence would be determined by the evidence with reference to the manner in which he operated the truck at the time and place in question.

In this connection, appellant argues that it was primary negligence on the part of the respondents to permit their minor son to drive the truck without procuring a driver's license. That may be true, but, even so, such negligence was not the efficient cause of the accident. Whether or not the driver of the truck possessed a license, the accident would, under the facts of the case, have occurred just the same.

We perceive no abuse of discretion on the part of the trial court in refusing to permit the trial amendment.

Appellant's second assignment of error is based upon the refusal of the court to grant his motion for judgment notwithstanding the verdict.

That motion was, and had to be, predicated upon the theory that it had been conclusively shown by the evidence that respondents' son was guilty of negligence, that his

negligence was the sole proximate cause of the accident, and that appellant was guilty of no negligence which proximately contributed to his injuries. If all these conditions existed as appellant claims or assumes, still the trial court could not properly have granted his motion, for the simple reason that the amount of any recovery to which appellant might thus have been entitled was nevertheless a matter for the jury, not for the court, to determine.

In an action for personal injuries, where the damages are unliquidated, it is the province of the jury to determine the amount to be awarded. *Bobst v. Hardisty,* 199 Wash. 304, 91 P. (2d) 567; *Richey & Gilbert Co. v. Northwestern Natural Gas Corp.,* 16 Wn. (2d) 631, 134 P. (2d) 444; 15 Am. Jur. 802, 804, Damages, §§ 364, 366.

The remaining question presented by appellant's assignments of error is whether there was sufficient evidence in the case to sustain the verdict of the jury. The parties are agreed that the law applicable to this phase of the case is contained in Rem. Supp. 1947, § 6360-64, the applicable portions of which read as follows:

"(1) Every person operating or driving a vehicle of any character upon the public highways of this state shall operate the same in a careful and prudent manner and *at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of the traffic, weight of vehicle, grade and width of highway, condition of surface and freedom of obstruction to view ahead and consistent with any and all conditions existing at the point of operation* so as not to unduly or unreasonably endanger the life, limb, property or other rights of any person entitled to the use of such public highways;

"(2) Subject to the provisions of subsection (1) of this section and except in those instances where a lower maximum lawful speed is provided by this act or otherwise, it shall be unlawful for the operator of any vehicle to operate the same at a speed in excess of the following:

"(a) Twenty-five (25) miles per hour within the limits of incorporated cities and towns; . . .

"(c) Twenty-five (25) miles per hour in traveling upon an arterial highway in any incorporated city or town and

traversing an intersection with another public highway not an arterial highway, and the operator of another vehicle about to enter the intersection of such arterial highway thereat, shall have brought his vehicle to a complete stop as required by law before entering such arterial highway;

. . .

*"Compliance with such speeds under the circumstances hereinabove set forth shall not relieve the operator of any vehicle from the further exercise of due care and caution as further circumstances shall require."* (Italics ours.)

These provisions were applicable, of course, both to the driver of the truck and to the driver of the motorcycle. As stated above, the issues in this case were (1) whether Dale Watson, the minor son, who was driving the truck, was guilty of negligence which constituted a proximate cause of the accident, and (2) whether appellant, the driver of the motorcycle, was guilty of negligence which proximately contributed to his injuries.

At this point we shall state some additional facts, as the jury could have found them from the evidence.

On the day of the accident, respondent Glenn Watson, a farmer, had brought some cattle, in a truck, to the auction ground in Davenport, for the purpose of selling them. He was accompanied by his minor son, Dale Watson. After the cattle had been unloaded, Mr. Watson sent Dale, with the truck, down town to purchase some groceries. In the performance of his mission, Dale parked the truck near the post office. After he had made his purchases, he went to a hotel nearby, where he had lunch with two of his uncles.

After finishing his lunch, Dale returned to the truck and proceeded to drive it in an easterly direction along Park street, toward Sixth street. He had never before driven along Park street in that vicinity. He did not see the stop sign at the southwest corner of the intersection, for the reason that another large cattle truck was parked immediately in front of it, thus obscuring it from view. Owing to various obstructions along the south side of Park street, he could not see any traffic approaching from the south on Sixth street, until the cab of his own truck had gotten into

the intersection. Driving at a speed of ten or fifteen miles an hour, he proceeded forward, in the meantime looking to his right and left for approaching traffic. Arriving at a point about half-way across Sixth street, he observed two motor-cycles coming down the hill, at a distance of one hundred feet or more away and traveling at a speed of twenty-five or thirty miles an hour. Being under the impression that he had the right of way, and thinking that he had ample time to get entirely across Sixth street before the motorcycles reached the intersection, he continued onward at a speed of between ten and fifteen miles an hour.

In the meantime, appellant and his companion, seated upon their motorcycles and riding practically side by side, had driven from the down-town section of the city, over various streets, to the top of the hill south of the intersection wherein the collision subsequently occurred. At the corner of Sixth and Merriam streets, they turned to the right and started northwardly down the hill on Sixth street, which is an arterial street having an oiled surface. It was a clear, warm afternoon. Going down the hill, appellant drove ahead of his companion, gaining a distance of about fifty feet. Marks upon the surface of the street indicated that appellant's motorcycle had skidded down hill a distance of approximately one hundred fifty feet immediately before colliding with the right-hand side of respondents' truck. At the moment of the collision, the truck was half-way across the easterly lane of travel of Sixth street. The force of the impact shoved the truck sideways a distance of about six inches, knocked the front wheels out of alignment, bent the tie rod, and dented the fender and hood. During the course of the trial, the jury was taken to view the scene of the accident.

While there was other testimony which was more favorable to the appellant, the jury had the right to accept respondents' evidence as establishing the additional facts just recited.

Upon all the evidence in the case, we think the jury could reasonably have found that, although respondents' son

was negligent in failing to stop at the stop sign, his negligence was not the proximate cause of the accident. But if the jury did not resolve that issue in favor of respondents, it nevertheless could still have found that appellant was himself guilty of negligence which contributed proximately to his injuries. It was for the jury to say, from all the evidence submitted to it, whether appellant had exceeded the speed limit of twenty-five miles an hour or whether his rate of speed, even though less than that, was nevertheless excessive under the conditions existing at the point of operation, and therefore in violation of Rem. Supp. 1947, § 6360-64, quoted above. Since the jury could have found in favor of the respondents on either one or both of the two material issues, it must be assumed that by its verdict it did so find.

The judgment is affirmed.

JEFFERS, C. J., BEALS, MALLERY, and HILL, JJ., concur.