[No. 44794. En Banc. January 26, 1978.]

EARL LINCOLN, ET AL, *Respondents*, v. TRANSAMERICA INVESTMENT CORPORATION, ET AL, *Appellants*.

572

*Eugene A. Stock,* for appellants.

*Gary H. Sexton* and *Andrew W. Olsen,* for respondents.

Rosellini, J.—This action, brought against a corporation which borrowed $20,000 from the plaintiff and against its corporate and individual guarantors, was commenced in Kitsap County, residence of the plaintiff. A timely motion to change the venue to King County, where the corporate defendants had their offices and where some of the individual defendants resided, was denied, as was a subsequent motion to change the venue for convenience of witnesses. An additional motion, made the same day, to change the venue to Mason County was also denied. After a trial to the court, judgment was entered for the plaintiff against the borrower and the guarantors.

On appeal, it is first contended that the court erred in entering judgment against the individual guarantors, their theory being that they were released from liability by virtue of the fact that the respondent extended the time for payment of the debt without their written consent. The debt had been due 3 weeks after the loan was made in October 1974. The Superior Court found that the individual guarantors, who were officers of the corporate defendants, had knowledge of the extension and consented to it. The evidence showed that two of the individual appellants were present at the board meeting at which an offer was made to the respondents to pay an additional $1,000 if they would forbear suit for 1 month. The others, upon learning of the extension, made no objection. According to the evidence and the findings, they were all aware that the corporate debtor did not have the funds to pay the debt.

During the ensuing months, only the sum of $1,500 was paid on the debt. In July 1975, this suit was instituted.

The appellants draw attention to the fact that courts tend to regard the uncompensated surety as a favorite of

the law. The liability of such a surety is confined to his express undertaking. The rule is that if a creditor, by positive contract with a principal debtor and without the consent of an uncompensated surety, extends the time of payment without reserving his rights against the surety, he thereby discharges the surety. *J.R. Watkins Co. v. Brund,* 160 Wash. 183, 294 P. 1024 (1931); *Van de Ven v. Overlook Mining & Dev. Co.,* 146 Wash. 332, 262 P. 981 (1928); *Tupper v. Hartman,* 121 Wash. 142, 208 P. 1103 (1922); *Nelson v. Flagg,* 18 Wash. 39, 50 P. 571 (1897); Restatement of the Law of Security § 129(1) (1941). *See* Annot., *Guarantor of nonnegotiable obligation as released by creditor's acceptance of debtor's note or other paper payable at an extended date,* 74 A.L.R.2d 734 (1960).

The reasons usually given for this rule are that an extension of time alters the surety's contract and that it deprives him of the right to pay the debt and proceed against the principal as soon as the debt becomes due, as a consequence of which his right of subrogation may be adversely affected.

The guarantor, however, is not released if he consents to the extension of time. The lower court in this suit found, upon substantial evidence, that the guarantors consented to the extension. The appellants do not seriously challenge this finding, but contend that the consent was not valid because it was not in writing. No authority is cited for the proposition that written consent is required if the surety is to be held.

The extension "agreement" itself was not in writing. It is not clear that the respondents entered into a binding agreement to extend the time of payment. All that the record actually discloses is that someone, supposedly speaking on behalf of the debtor corporation, offered to pay the respondents an additional $1,000 if they would forbear suit for an additional 30 days. We are not called upon to determine whether this verbal transaction resulted in a binding obligation on the part of the respondents to extend the time of payment, since we approve the Superior Court's

finding that the guarantors consented to the arrangement. Insofar as we can ascertain, the courts have never required that consent to an extension must be evidenced by a writing, and we are shown no reason why such a requirement should be imposed.

While not making an argument that the fact is determinative, the respondents point out that the individual guarantors were all principal stockholders and/or officers of the debtor and guarantor corporations. There is a line of cases which holds that a principal stockholder who signs a note with a corporation intending to be bound only as a surety is not entitled to the same liberality of treatment which the law accords to a voluntary surety, and that where an extension of time is granted to the corporation for a consideration, the stockholder, although he did not consent to the extension, is not released, unless he suffered some actual injury as a result of the extension. The leading case is *First Nat'l Bank v. Livermore,* 90 Kan. 395, 133 P. 734 (1913), and the cases are noted in W. Shattuck, *Washington Materials on Suretyship* 19–3 (rev. 1964). These cases proceed upon the theory that both the loan and the extension of the time of payments benefit the corporation's officers and stockholders by reason of their interest in the debtor corporation, making them akin to the compensated surety, who, according to the general rule, is not released by an extension. Restatement of the Law of Security § 129(2) (1941).

In this case, there is no contention that the appellants lost any advantage or suffered any injury as a result of the extension of time to the debtor.

The doctrine of *First Nat'l Bank v. Livermore, supra,* which would appear to be grounded upon an assumption which is generally valid, strengthens the inference of consent which the trial court drew from the appellants' acquiescence in the extension of time.

During the presentation of findings, the appellants asked the court to amend the pleadings to conform to the proof,

which, they maintained, showed the transaction was usurious. Error is assigned to the denial of that motion. The appellants concede that usury is an affirmative defense, which under CR 8 must be pleaded. While they rely upon the rule that pleadings will be deemed amended to conform to the proof, they do not point to any evidence establishing the fact that the "finder's fee" of $1,000 which the guarantors agreed to pay, in addition to the $20,000 loaned, was usurious interest and not payment for services. Furthermore, they offer no legal argument that the transaction, or the subsequent offer to pay an additional $1,000 if suit was not instituted for 30 days, was usurious. We cannot hold this transaction usurious on its face.

■ Every amount paid to a lender is not necessarily a charge for the use of the money. The courts of this state have recognized that payment for services is not payment for the use of money (*Peoples Nat'l Bank v. National Bank of Commerce,* 69 Wn.2d 682, 420 P.2d 208 (1966)) and that a "finder's fee" may indeed be referable to services rendered rather than to compensation for the loan of money. *Maynard v. England,* 13 Wn. App. 961, 538 P.2d 551 (1975).

■ Upon the question of usury, where a contract is susceptible of two constructions, one lawful and the other unlawful, the former will be adopted. *German Sav., Bldg. & Loan Ass'n v. Leavens,* 89 Wash. 78, 153 P. 1092 (1916). The burden of proof is upon the one alleging usury to establish that defense by evidence, where the fact of usury does not appear on the face of the transaction. *Malotte v. Gorton,* 75 Wn.2d 306, 450 P.2d 820 (1969). Furthermore, had the defense of usury been pleaded, the respondents would have been alerted to prepare themselves to offer what proof they could that actual services were rendered to the corporation, for which this fee was intended in whole or in part as compensation. The court would not have been justified in rendering judgment against them on this issue upon the bare showing that a "finder's fee" had been promised.

Furthermore, we have said that to establish usury, all of the elements of that defense must be established. *Flannery v. Bishop,* 81 Wn.2d 696, 504 P.2d 778 (1972). These include not only the exaction of a greater profit than is allowed by law upon a loan or forbearance which is repayable absolutely, and an intentional doing of acts which violate the statute. While it was established that there was a loan and an absolute obligation to repay it, the appellants do not draw our attention to any evidence establishing the other elements of usury.

There may well be other arguments that could have been made by the respondents, had the defense of usury been put in issue by the pleadings. We do not intend to express an opinion upon the merits of those we have suggested as possibilities or others which might occur to counsel. We merely conclude that we cannot say as a matter of law, upon the showing made by the appellants, that usury has been established.

The disposition of motions to amend the pleadings is discretionary with the trial court, and its refusal to permit such an amendment will not be overturned except for manifest abuse of discretion. *Weihs v. Watson,* 32 Wn.2d 625, 203 P.2d 350 (1949). No such abuse has been shown in this instance.

■ Error is assigned to the dismissal of a counterclaim under which it was sought to set off against the respondents' claim certain payments which were allegedly due on real estate contracts. The trial court, having noted that the validity of this claim was at issue in another action then pending in Mason County, concluded that the parties' rights with respect to it could best be determined in that forum. We find no abuse of discretion in its ruling on this matter.

■ It is next urged that the court committed reversible error in refusing to allow a change of venue to King County, the place in which the debtor corporation maintained its

---

[1]Now "discretionary review." *See* RAP 2.1(a).

office, either as a matter of right, under RCW 4.12.025, or for convenience of witnesses, under RCW 4.12.030. We will assume, without deciding, that had the appellants sought immediate review of the court's orders with respect to these motions, the appellate court hearing the petition would have ordered a change of venue. But their proper remedy was to seek review by certiorari[1] and not to wait until the trial was concluded and then ask an appellate court to set aside an unfavorable judgment on the basis that the venue was laid in the wrong county. If the latter course is followed, it is incumbent upon an appellant to show that he was prejudiced by the denial of a change of venue; otherwise a new trial will not be granted. In *Russell v. Marenakos Logging Co.*, 61 Wn.2d 761, 380 P.2d 744 (1963), this court in a scholarly opinion written by Judge Hill, reviewed our cases touching upon this subject and observed in a footnote that only one case had been found in which, on appeal, a new trial was granted because a party had been prejudiced by reason of the county in which the trial was held. That case was *State v. Hillman*, 42 Wash. 615, 85 P. 63 (1906). Our research has revealed none since. There the defendant had been prejudiced by adverse publicity.

Thus the statement made in that opinion "that, except in rare instances, the mills of justice grind with equal fineness in every county of the state" (*Russell v. Marenakos Logging Co., supra* at 765), would appear to have considerable substance.

As the cases cited in *Marenakos* show, this court has consistently taken cognizance of petitions for certiorari to review orders pertaining to venue, so that parties desiring to enforce their statutory rights may have an adequate remedy. But if they choose not to avail themselves of the extraordinary remedy, they must be deemed to have waived the right to insist upon a change of venue, unless denial of a change results in prejudice to their cause.

There is no showing of prejudice in this case. The action was tried in Kitsap County—to use the words of respondents' counsel, "only a ferry boat ride away" from the appellant corporation offices. Because the court calendar of Kitsap County was not burdened with an overload of cases comparable to that existing in King County, a speedy trial was obtained. There were only a few witnesses, all of them parties to the transaction, and if they were unduly inconvenienced in attending the trial, we are not advised of that fact. There is no contention that other witnesses were needed but were not called because of their unwillingness to travel to Kitsap County.

Since the appellants suffered no injury as a result of the court's refusal to order a change of venue, its rulings with respect to these motions do not afford grounds for a new trial.

The judgment is affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.