[No. 10979-1-I.  Division One.  February 21, 1984.]

OLD NATIONAL BANK OF WASHINGTON, *Respondent,* v. SEATTLE SMASHERS CORPORATION, ET AL, *Defendants,* LORRIN CARL, ET AL, *Appellants.*

*David A. Williams,* for appellants.

*Diamond & Sylvester, Craig Sternberg,* and *S. Randall Johnson,* for respondent.

SCHOLFIELD, J.—Carl, Conte, Shaw and Sapiro (hereafter guarantors) appeal a summary judgment granted respondent Old National Bank (ONB) against them individually and their marital communities in the amount of $36,813.22, plus interest and attorney's fees.

In 1978, the guarantors all signed continuing guaranties to secure loans from ONB to the Seattle Smashers Corporation (hereafter Corporation). The guarantors were at the time members of the corporation's board of directors. The guaranties applied to "any loans, discounts, advances or other credits, whether secured or unsecured, and any modifications, renewals or extensions of any existing or future indebtedness" incurred by the Corporation. The guaranties also provided:

> The undersigned agree that the Bank, its endorsees or assignees, may grant extensions, receive or surrender securities, accept compositions, grant releases and discharges and otherwise deal with the Customer and with other parties and securities as it or they may see fit . . . . . .
>
> This shall be a continuing guaranty, and shall cover all liabilities of the Customer to the Bank until the undersigned, or the executors or administrators of the undersigned, shall have given the Bank notice in writing to extend no further credit on the security of this guaranty; but such notice shall not affect the liability of the undersigned on any transactions covered by this guaranty entered into before actual receipt of such written notice by the Bank.

ONB subsequently advanced the Corporation $40,000 in return for a 90–day promissory note dated July 3, 1978. On November 17, 1978, the note was renewed with another 90–day note.

The Corporation then applied for a loan from the Small Business Administration (SBA). The SBA required as a condition of the loan that all bank debt be extended or "termed" over a period of 5 years. At a special meeting of the board of directors on March 8, 1979, the extension of the ONB loan was briefly discussed. The four guarantors were present at the meeting. Later that day, they resigned from the board of directors.

On March 13, 1979, ONB notified the SBA that it was agreeing to amortize its loan to the Corporation over a 5–year period. On April 6, 1979, the guarantors delivered a letter to ONB advising the bank "not to extend further credit to the Seattle Smashers based on the security of any guaranty, or guarantees" executed by them. Ten days later, on April 16, 1979, ONB accepted a new promissory note executed by the Corporation in the amount of $40,000, requiring repayment over 5 years.

ONB brought suit to recover on the April 1979 note against both the Corporation and the guarantors. The guarantors and ONB moved for summary judgment. The trial judge granted ONB's motion, and judgment was

entered on November 5, 1981.

The guarantors contend that the extension of time for payment of the note, occurring after revocation of their guaranty, was a material modification of the obligation without their consent and therefore discharged their obligation to guarantee payment.

██ Extending the time of payment without consent of the surety operates to discharge the surety. *J.R. Watkins Co. v. Brund,* 160 Wash. 183, 189, 294 P. 1024 (1931); *Lincoln v. Transamerica Inv. Corp.,* 89 Wn.2d 571, 574, 573 P.2d 1316 (1978).

The guarantor, however, is not released if he consents to the extension of time. *Lincoln v. Transamerica Inv. Corp., supra* at 574.

To determine the intent of the parties, the language of a guaranty agreement should receive a fair and reasonable interpretation reflecting the purpose of the agreement and the right of the guarantor not to have his obligation enlarged. *Hansen Serv., Inc. v. Lunn,* 155 Wash. 182, 189, 283 P. 695 (1930). If the language employed is equally susceptible of two or more meanings, it should be construed against the party using the ambiguous language. *Seattle-First Nat'l Bank v. Hawk,* 17 Wn. App. 251, 256, 562 P.2d 260 (1977).

The language of the guaranty is determinative of the issue in this case.

ONB's right to extend the time of payment was a condition exacted from the guarantors before any loan was made to the Corporation. The guarantors promised to pay "all loans, discounts or advances which have been made or which may hereafter be made by the Bank to the Customer, as well as any renewals of any loans, discounts or advances".

The agreement clearly provides that a notice of revocation of the guaranty would "not affect the liability of the undersigned [guarantors] on any transactions covered by this guaranty entered into before actual receipt of such written notice by the Bank." Consent to the extension was

given in the guaranty agreement.

We perceive no ambiguity in this language. The agreement contemplates guaranty of loans and gives the bank the right to renew or extend payment of those obligations without notice to or consent of the guarantors. The making of a loan with the stipulation to renew or extend payment is a "transaction" within the meaning of the guaranty.

> Where a guaranty expressly includes renewals or extensions of an original obligation, if there is sufficient consideration for the guaranty of the original obligation, the guaranty is irrevocable in respect to extensions or renewals. The guarantor is not promising a series of performances. There is but one debt, and the guaranty is simply a promise to pay that one debt, if the principal debtor fails to do so. Thus, in speaking of a guaranty indorsed for value on a note, the court said:
> "In view of the rule that death of the guarantor does not revoke the guaranty in cases such as the instant one, it follows that death did not revoke *any part* of said guaranty. The guaranty included the right in the creditor to give extensions. The grant of that right was an act which took place *in the guarantor's lifetime.* It therefore is inappropriate to argue that 'dead guarantors can make no new promises,' for the right of renewal and extension did not here depend on any implied new promise, but was derived from the old promise, made by the guarantor at the inception of the contract."

(Footnotes omitted.) 10 S. Williston, *Contracts* § 1253, at 807 (3d ed. 1967); *Bennett v. Checotah State Bank,* 176 Okla. 518, 56 P.2d 848 (1936). *Accord, Exchange Nat'l Bank v. Hunt,* 75 Wash. 513, 135 P. 224 (1913); *Chevron Chem. Co. v. Mecham,* 536 F. Supp. 1036 (D. Utah 1982); *First N.J. Bank v. F.L.M. Business Machs., Inc.,* 130 N.J. Super. 151, 325 A.2d 843 (1974).

The guarantors argue that they were guarantors without compensation, and thus the guaranty contract should be strictly construed against the bank. *Hansen Serv., Inc. v. Lunn, supra* at 189.

■ Whether the guarantors volunteered or were compensated would not change the result in this case. However,

as stockholders and directors of the Corporation, the guarantors were in a position to benefit economically by the bank's extension of credit to the Corporation. They are not uncompensated guarantors. *Lincoln v. Transamerica Inv. Corp., supra* at 575, citing *First Nat'l Bank v. Livermore,* 90 Kan. 395, 133 P. 734 (1913).

ONB has requested attorney's fees on this appeal. A provision in the guaranty contract entitles ONB, as the prevailing party, to a reasonable attorney's fee. We have reviewed the affidavit by ONB's attorney and conclude that $2,500 is a reasonable fee.

Affirmed.

CALLOW and RINGOLD, JJ., concur.