[No. 87062-4.    En Banc.]
Argued September 20, 2012.    Decided January 17, 2013.

WAQAS SALEEMI ET AL., *Respondents*, v. DOCTOR'S
ASSOCIATES, INC., *Petitioner*.

*Gary H. Branfeld* (of *Smith Alling PS*), for petitioner.

*Douglas D. Sulkosky*; and *Todd S. Baran* (of *Todd S. Baran PC*), for respondents.

¶1 CHAMBERS, J.* — Doctor's Associates Inc. (DAI), a Florida corporation, franchises Subway sandwich shops across the country. Waqas Saleemi and Farooq Sharyar operated three Subway franchises in Washington State. Their franchise agreements provided that any disputes would be arbitrated in Bridgeport, Connecticut, under Connecticut law, except for Connecticut franchise law. After a dispute arose, a Washington State superior court judge found the choice of law and forum selection clause unenforceable and entered an order compelling Washington arbitration. DAI did not seek discretionary review at the time. Saleemi and Sharyar prevailed at arbitration. DAI now asks us to vacate the trial court's order compelling arbitration that would require this dispute to be arbitrated, again, in Connecticut. But DAI fails to show that it has been prejudiced by the trial court's order compelling arbitration. We affirm.

## FACTS

¶2 Between 2004 and 2006, Saleemi and Sharyar entered into three franchise agreements with DAI to operate three Subway sandwich shops in Pierce County. In 2008, a manager at one of the restaurants told DAI inspectors that "he rarely saw respondents' brother Faraz Saleemi, the former manager of the store, because 'they' had opened a new restaurant in Bonney Lake named Puccini's." Clerk's Papers (CP) at 288 (Interim Award of Arbitrator). Under the franchise agreement, Saleemi and Sharyar had agreed that they would " 'not own or operate, or assist another person to own or operate, any other business . . . which is identical with or similar to the business reasonably contemplated by this Agreement.' " CP at 289 (quoting Franchise Agreement). Ethan Golf, who was at the time a DAI contractor, researched the manager's tip on the Internet, saw what he

---

* Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

believed to be pictures of Waqas Saleemi behind the counter at Puccini's, and sent an "employee to purchase sandwiches at the restaurant. The employee returned with the sandwiches and reported that she had observed respondents working there." CP at 288. Golf informed Len Axelrod, the head of DAI's legal department.

¶3 Axelrod did not refer the matter to the usual internal legal team. Under DAI's normal practices, as found by the arbitrator,

> termination letters for non-compete violations would generally describe the nature of the violation and provide for a cure by having the franchisee discontinue its ownership or operation of the competing business, pay a penalty and pay a percentage of the gross sales of the competing business as set forth in the franchise agreement.

CP at 289. Instead of these normal practices, the termination letter sent to Saleemi and Sharyar did not describe the violation or offer them any opportunity to cure. *Id.* When pressed by Saleemi and Sharyar's attorney, DAI attorney Kerry Patton sent a follow-up letter that described the alleged violation, asserted that the damages were in excess of $45,000, and offered to allow Saleemi and Sharyar to cure by selling the Subway restaurants within 60 days. The head of DAI's legal practice group "acknowledged that the penalties . . . exceeded and were inconsistent with those authorized by section 5.4 of the [franchise] Agreements." *Id.* It appears that at least Golf and Axelrod believed, incorrectly, that Saleemi and Sharyar had an ownership interest in Puccini's.

¶4 After receiving the second termination letter, Saleemi and Sharyar attempted to sell their Subway franchises. They had initial cause for optimism: it was well within the 60 day window.

> Salim Malik signed an agreement to purchase the three stores . . . subject to a 20 day contingency period. At the insistence of Mr. Axelrod, DAI filed its Demand for Arbitration

on August 20, 2008, less than 60 days after Mr. Patton's letter. Mr. Malik was told of the pending arbitration by respondents during the contingency period and elected to withdraw the offer. By declaration he states he withdrew his offer solely because of the pending lawsuit.

CP at 290. Malik had offered to purchase the three stores for $1,180,000. *Id.* The arbitrator later found that "[t]he difference between the Malik purchase price and the present value of the three stores exceeds $100,000." *Id.*

¶5 After Malik withdrew his purchase offer and with DAI's demand for arbitration pending, Saleemi and Sharyar filed suit in Pierce County Superior Court, arguing that DAI's conduct violated the franchise agreements; Washington's Franchise Investment Protection Act (FIPA), ch. 19.100 RCW; and Washington's Consumer Protection Act (CPA), ch. 19.86 RCW. CP at 2-3. They asked the judge to enjoin the Connecticut arbitration.

¶6 The 2006 franchise agreement also had an unusual choice of law provision:

> This Agreement will be governed by and construed in accordance with the substantive laws of the State of Connecticut, without reference to its conflicts of law, except as may otherwise be provided in this Agreement. The parties agree any franchise law or business opportunity law of the State of Connecticut, now in effect, or adopted or amended after the date of this Agreement, will not apply to franchises located outside of Connecticut.

CP at 37. The 2006 franchise agreement did not identify what franchise or business opportunity law would apply. Damages were limited to either compensatory damages not to exceed $100,000 or, in the alternative, all franchise fees and royalties paid to DAI by the franchisee during the preceding three years.

¶7 On September 19, 2008, Judge Kitty-Ann van Doorninck found the forum selection clause "unconscionable and unenforceable" and ordered "that the disputes

between the parties shall be arbitrated in Washington under Washington law, with no limitations on remedies." CP at 217-18. DAI did not seek discretionary review of Judge van Doorninck's order, and arbitration was conducted, as required by the franchise agreement, under American Arbitration Association rules. CP at 35, 222.

¶8 More than a year later, the arbitrator denied all of DAI's claims and ruled for Saleemi and Sharyar. The arbitrator found that DAI's belated offer to cure contained penalties that "exceeded and were inconsistent with those authorized by section 5.d of the Agreements." CP at 289.[1] He found that "DAI discriminated between respondents and other franchisees similarly situated. DAI did not prove that this discrimination was reasonably necessary. Thus, this conduct violated RCW 19.100.180[(2)](c)." CP at 289-90. He also found that "[a]lthough there is some evidence to the contrary, this discrimination was not motivated by respondents' religion, race or ancestry." CP at 290. The arbitrator awarded Saleemi and Sharyar compensatory damages "as that term is defined in section 17" of the franchise agreement in the sum of $230,000—$161,536 for attorney fees and $32,837.96 in costs. CP at 222, 290.

¶9 DAI moved to vacate the arbitration award, largely based on the trial court's original order directing Washington arbitration.[2] Perhaps struck by the time and expense

---

[1] Section 5 of the franchise agreement sets forth the franchisee's obligations. Subsection d states:

You will not own or operate, or assist another person to own or operate, any other business anywhere, directly or indirectly, during the term of this Agreement, which is identical with or similar to the business reasonably contemplated by this Agreement, except as our authorized representative or as our duly licensed franchisee at a location we approve. You agree to pay us $15,000 for each business you own or operate in violation of this Subparagraph, plus eight percent (8%) of its gross sales, as being a reasonable pre-estimate of the damages we will suffer.

CP at 30.

[2] DAI also moved to vacate a prejudgment interest award as in violation of *Department of Corrections v. Fluor Daniel, Inc.*, 160 Wn.2d 786, 161 P.3d 372 (2007). That issue has been resolved and is not before us.

that would have been wasted if her order compelling arbitration was vacated after the lengthy arbitration had finished, Judge van Doorninck directly asked DAI's lawyer why he had not sought discretionary review. Counsel responded that DAI had determined the "cost and expenses of taking the appeal would not be a wise allocation" and suggested that since Judge van Doorninck had originally ruled, subsequent case law had provided additional support for upholding the forum selection clause. Verbatim Report of Proceedings (Jan. 22, 2010) at 7-8. Judge van Doorninck noted that under Washington law, "there needs to be clear error on the face of the arbitrator's award," found none, and concluded that "[i]t is clear that the defense is unhappy with the result, so you're trying to get a second bite at the apple and it's not going to happen on my watch." *Id.* at 8-9.

¶10 DAI appealed, arguing that the trial court's initial order compelling Washington arbitration was in error and the error was structural. The Court of Appeals concluded that even if the trial judge's order was incorrect, DAI had not shown prejudice and was not entitled to relief. *Saleemi v. Doctor's Assocs.*, 166 Wn. App. 81, 98, 269 P.3d 350 (2012). We accepted review. *Saleemi v. Doctor's Assocs.*, 174 Wn.2d 1001, 278 P.3d 1111 (2012).

## ANALYSIS

¶11 We typically review trial court decisions to compel or deny arbitration de novo. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004) (citing *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001)). Under Washington law, an arbitration agreement "is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract." RCW 7.04A.060(1). This is substantially similar to the Federal Arbitration Act's (FAA) command that an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

■ ¶12 While not before us, we note with approval the Court of Appeals' rejection of the proposition that the failure to seek discretionary review of an order compelling arbitration waives a later challenge. *Saleemi*, 166 Wn. App. at 91. At the time of the order compelling arbitration, DAI had only a right to move for discretionary review under RAP 2.3, not for review as of right under RAP 2.2. It did not lose its right to review as a right by not seeking discretionary review.

### COURTS' LIMITED AUTHORITY IN ARBITRATION

■ ¶13 Courts, not arbitrators, determine the threshold matter of whether an arbitration clause is valid and enforceable. *See, e.g., McKee v. AT&T Corp.*, 164 Wn.2d 372, 383-84, 191 P.3d 845 (2008); *see also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 998 (9th Cir. 2010) ("We hold that, as long as the plaintiff's challenge to the validity of an arbitration clause is a distinct question from the validity of the contract as a whole, the question of arbitrability is for the court to decide."). The FAA provides that states may apply generally accepted contract principles in determining the enforceability of arbitration clauses so long as the principle or law applied does not apply only to arbitrations or derive their meaning from the fact that an agreement to arbitrate is at issue. 9 U.S.C. § 2; *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996); *see also AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 1742-43, 179 L. Ed. 2d 742 (2011). Washington law vests courts with the power to determine "whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." RCW 7.04A.060(2). Washington courts have regularly decided whether choice of law and forum selection clauses in arbitration clauses are enforceable. *McKee*, 164 Wn.2d at 384-85; *Scott v. Cingular Wireless*, 160 Wn.2d 843, 858, 161 P.3d 1000 (2007); *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 837, 161 P.3d 1016 (2007).

■ ¶14 DAI asserts that *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006), stands for the proposition that "once the trial court determines that there is an enforceable agreement to arbitrate the dispute, then the trial court's inquiry stops and the remaining matters are left for the arbitrator." Pet'r's Suppl. Br. at 6. We can find no such statement in *Buckeye*. *Buckeye* holds that the question of whether the whole *contract*, as opposed to the arbitration provision, is void is for the arbitrator, not the court. *Buckeye*, 546 U.S. at 448-49. Saleemi and Sharyar are not challenging the contract as a whole, only the enforceability of a few of its dispute resolution provisions.

■ ¶15 DAI draws our attention to *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003). *PacifiCare* considered whether doctors could be compelled to arbitrate their racketeering claims against managed health care organizations given that the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, provides treble damages and several of the doctors' contracts forbade punitive damages. *Id.* at 402-03. The doctors argued that the prohibition on punitive damages denied them " 'meaningful relief for allegations of statutory violations in an arbitration forum' " and thus the RICO claims were not subject to arbitration under *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1055 (11th Cir. 1998). *PacifiCare*, 538 U.S. at 403 (quoting *In re Managed Care Litig.*, 132 F. Supp. 2d 989, 1007 (S.D. Fla. 2000)), *modified on other grounds by* 143 F. Supp. 2d 1371 (S.D. Fla. 2001). The court appeared to assume that the damages' limitation would violate the law if interpreted to bar statutory treble damages but noted that RICO's treble damages provision had a " 'remedial function' " as well as a punitive one. *Id.* at 406. The court observed that the arbitrator might well decide that treble damages were available as remedial damages and concluded that judicial intervention was premature. *Id.* (quoting *Agency Holding*

*Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 151, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987); *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 241, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)). *PacifiCare* does not stand for the proposition that the question of damages is "strictly" for the arbitrator. Instead, it holds that when an arbitration clause is ambiguous as to whether statutory remedies are available, courts should not presume the arbitrator will err in law. *Id.* at 407. This is consistent with our own case law. *See Zuver*, 153 Wn.2d at 311-12.

¶16 While we agree with DAI that courts' authority is limited once the parties have agreed to submit their claims to arbitration, it is for the courts to determine whether the agreement to arbitrate is valid and enforceable based on general contract principles.

## FAA

¶17 DAI argues that Judge van Doorninck violated the FAA by ordering and confirming arbitration. Saleemi and Sharyar argue that these issues were not raised below and it would be inappropriate for us to reach them here. *See, e.g., Zuver*, 153 Wn.2d at 321 (declining to reach issues raised for the first time at this court). While DAI devoted no argument to its FAA theories until this court, it did allude to it before, and we recognize that the FAA permeates arbitration law. However, because the issue has not been fully developed, we leave for another day a thorough review of the savings clause in section 2 of the FAA.

### VACATION OF 2008 ORDER COMPELLING ARBITRATION

¶18 While DAI did not ask us to review this issue pursuant to RAP 13.7(b), essentially, it asks us to vacate the 2008 order compelling arbitration. DAI argues the court erred in failing to strictly enforce the venue, choice of law, and damages limitations in the franchise agreement. DAI suggested that the law is more favorable to its position now

than it was in 2008 when the trial court compelled arbitration in Washington and assumes that we should not apply the law of 2008 to review the court's 2008 order compelling an arbitration that resulted in an award and judgment in 2010.

¶19 DAI offers several lengthy quotes from *Concepcion*, 131 S. Ct. 1740, for the proposition that arbitration agreements must be enforced " 'according to their terms.' " Pet'r's Suppl. Br. at 7 (quoting *Concepcion*, 131 S. Ct. at 1748). But *Concepcion* considered state rules "classifying most collective-arbitration waivers in consumer contracts as unconscionable," *Concepcion*, 131 S. Ct. at 1746, not the sort of case-by-case analysis of arbitration agreements that Washington courts have historically performed. Several times the United States Supreme Court emphasized in *Concepcion* the limited way that it focused the issue on state rules severely regulating class action waivers. For example, the first paragraph of the opinion ends: "We consider whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." *Id.* at 1744. Two pages later, the court again specifically articulated the question it is addressing. "The question in this case is whether § 2 [of the FAA] preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." *Id.* at 1746. Whether *Concepcion* reaches beyond class arbitration procedures is subject to debate. But until our precedents are specifically overruled, they remain good law. *See United States v. Booker*, 375 F.3d 508, 513 (7th Cir. 2004) (citing *State Oil Co. v. Khan*, 522 U.S. 3, 20, 118 S. Ct. 275, 139 L. Ed. 2d 199 (1997) (noting that only the Supreme Court can overrule its own decisions)). While we find these cases interesting, we agree with our Court of Appeals that before we reach these issues, DAI must show some prejudice caused by the trial court's order. Because DAI fails to show any prejudice, for reasons

discussed below we find it unnecessary to reach the merits of the underlying 2008 order to arbitrate in Washington.[3]

## PREJUDICE REQUIREMENT

¶20 We join the emerging consensus of courts and hold that a party who fails to seek discretionary review of an order compelling arbitration must show prejudice as a condition of relief from the arbitration award.[4] This approach promotes prime purposes of arbitration, speed, and convenience, while allowing the truly aggrieved party to obtain relief.

¶21 It is well established that errors in civil cases are rarely grounds for relief without a showing of prejudice to the losing party. For example, in *Lincoln v. Transamerica Investment Corp.*, 89 Wn.2d 571, 573 P.2d 1316 (1978), we held that a successful posttrial challenge to venue required the challenger to show prejudice on the grounds that we presume justice is applied equally across the State. *Id.* at 573, 578. Five years later, this court was blunter: "error without prejudice is not grounds for reversal." *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) (citing *Ashley v. Lance*, 80 Wn.2d 274, 282, 493 P.2d 1242 (1972)). "Error will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial." *Id.* (citing *James S. Black & Co. v. P&R Co.*, 12 Wn. App. 533, 537, 530 P.2d 722 (1975)).

¶22 Similar principles have been applied by courts reviewing court decisions regarding arbitration. While the jurisprudence is still developing, the trend is to require a party challenging an order compelling arbitration after the arbitration has been complete to show it suffered some

---

[3] By not reaching the merits of DAI's argument, we do not imply that we necessarily agree with DAI's contentions.

[4] We do not reach whether the prejudice requirement would also apply to a party that unsuccessfully seeks discretionary review of an order compelling arbitration.

harm. For example, the Ninth Circuit Court of Appeals has held that an arbitrator's failure to apply the correct choice of law was not reversible error when it appeared to be harmless. *Barnes v. Logan*, 122 F.3d 820, 823 (9th Cir. 1997). Six years later, the court went a step further and held that an arbitrator's *incorrect* choice of law was not grounds for reversal unless the arbitrator could *not* have made the award under the properly chosen law. *Coutee v. Barington Capital Grp., LP*, 336 F.3d 1128, 1134 (9th Cir. 2003);[5] *see also Norris v. Sec. & Exch. Comm'n*, 675 F.3d 1349, 1355 (Fed. Cir. 2012); *Beals v. N.Y. City Transit*, 94 A.D.3d 543, 942, N.Y.S.2d 86 (2012); *Tutti Mangia Italian Grill, Inc. v. Am. Textile Maint. Co.*, 197 Cal. App. 4th 733, 744, 128 Cal. Rptr. 3d 551 (2011); *Shepard v. Foremost Ins. Co.*, 365 F. App'x 76, 77 (9th Cir. 2010); *Schadrack v. K.P. Burke Builder, LLC*, 407 N.J. Super. 153, 168, 970 A.2d 368 (Ct. App. Div. 2009); *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir. 2005).

¶23 This is in accord with modern practices relating to error. For centuries, any error, including a misspelling in an indictment, was grounds for reversal. ROGER TRAYNOR, THE RIDDLE OF HARMLESS ERROR 3-8 (1970). But Washington courts have never reversed civil judgments for harmless error. RCW 4.36.240 ("The court shall, in every stage of an action, disregard any error or defect in pleadings or proceedings which shall not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect."); *see also* LAWS OF 1854, § 71, at 144; 28 U.S.C. § 2111 ("the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the

---

5

 A federal court may vacate an arbitration award, or a portion thereof, if the arbitrators acted beyond their authority. 9 U.S.C. § 10. Arbitrators act beyond their authority if they fail to adhere to a valid, enforceable choice of law clause agreed upon by the parties. *Barnes v. Logan*, 122 F.3d 820, 823 (9th Cir.1997). If such error is harmless, however, it is not grounds for vacatur.

*Coutee*, 336 F.3d at 1134.

parties"); *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947); *accord In re Det. of Kistenmacher*, 163 Wn.2d 166, 186, 178 P.3d 949 (2008). In this context, error is harmless unless it affects a fundamental right or there is a substantial likelihood it affected the outcome of the arbitration.[6] We will consider each claim in turn.

A. Choice of Law

¶24 DAI contents that the trial court erred in directing that Washington law applied. The choice of law clause before us mostly directs the parties to apply Connecticut law, except that "[t]he parties agree any franchise law or business opportunity law of the State of Connecticut, now in effect, or adopted or amended after the date of this Agreement, will not apply to franchises located outside of Connecticut." CP at 37. No alternative source of franchise law is identified in the choice of law clause. Thus, the classic choice of law question of whether Connecticut's relevant laws violate fundamental public policies of the State of Washington is not presented. *See McKee*, 164 Wn.2d at 384 (citing *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 690-91, 167 P.3d 1112 (2007) (setting forth the three part choice of law analysis)). DAI concedes that Washington's FIPA applies to this dispute. Under Washington law, it plainly would apply: the act provides that "[a]ny agreement, condition, stipulation or provision, including a choice of law provision, purporting to bind any person to waive compliance with any provision of this chapter or any rule or order hereunder is void." RCW 19.100.220(2). While Connecticut law may apply generally, Washington's FIPA, not Connecticut's franchise law, applies to this dispute.

¶25 The arbitrator's ruling is primarily factual. The only law cited by the arbitrator is FIPA, which DAI concedes is the applicable law. Assuming that DAI is correct that only Connecticut law should apply except for franchise law, it

---

[6] Given that the parties do not specifically argue for a harmless error test, we are open to further refinement of this approach.

fails to show how the choice of Washington's law would have made any difference in the arbitrator's award. It has demonstrated no prejudice.

## B. Limits on Damages

¶26 Judge van Doorninck ruled that there would be no limit on remedies. Under FIPA, "[t]he commission of any unfair or deceptive acts or practices or unfair methods of competition prohibited by RCW 19.100.180 as now or hereafter amended shall constitute an unfair or deceptive act or practice under the provisions of chapter 19.86 RCW," the CPA. RCW 19.100.190(1). Under Washington's CPA, actual and punitive damages are available. RCW 19.86.090.[7] This court has been reluctant to allow CPA rights to be waived by preinjury contract. *See, e.g.*, *McKee*, 164 Wn.2d at 386; *Dix*, 160 Wn.2d at 838; *Scott*, 160 Wn.2d at 858; RCW 19.100.190(1). Under the franchise agreements, damages were limited to compensatory damages the greater of either $100,000 or franchise and royalty fees paid during the previous three years. Thus, this remedy limitation provision may well be unenforceable under Washington law. RCW 19.100.190(1); RCW 19.86.090; *see also Zuver*, 153 Wn.2d at 318-19 (finding one-sided limitation on damages substantively unconscionable and unenforceable). *But see McKee*, 164 Wn.2d at 401 (finding limitation on punitive damages in a long distance contract not unconscionable).

¶27 Assuming for the sake of argument that the trial judge should not have struck the damages limit in the arbitration agreement as unenforceable under Washington law, the face of the arbitration award shows that the arbitrator was keenly aware of the contractual damages. The arbitrator's interim award provides, "Claimant DAI shall pay to respondents 'compensatory damages' as that

---

[7] Accord *Dix*, 160 Wn.2d 826, holding that a forum selection clause selecting Virginia as the forum for an arbitration was unenforceable on public policy grounds if it left the plaintiff with no feasible avenue for seeking relief for violations of Washington's CPA, which, among other things, provides for treble damages for unfair and deceptive acts or practices.

term is defined in section 17 of exhibit 52 [the damages limitation clause]. They may choose either option." CP at 290. Therefore, the plaintiffs were limited to either the $100,000 limit option or franchise fees and royalties limit option.

¶28 The arbitrator awarded compensatory damages in the amount of $230,000 plus attorney fees and costs. At issue are three franchise agreements for three different sandwich shops, and each agreement has a limit of $100,000. DAI fails to show that the $100,000 limit is not cumulative for a total of $300,000. Further, the limits are in the alternative, to be computed by calculating the franchise fees and royalties paid by the franchisees on the three sandwich shops over the last three years. There is no evidence in the record before us that an award of $230,000 exceeds the franchise fees and royalties paid in the last three years. Therefore, DAI has not shown the arbitration award did not comply with the contractual limits and has not shown prejudice.

C. Forum Selection

¶29  DAI contends it was prejudiced when the trial judge refused to enforce the forum selection clause in the franchise agreements. A forum selection clause is presumptively valid unless it violates fundamental public policy of the State of Washington and Washington's interest in the determination of the issue materially outweighs the chosen state's interest, among other things. *McKee*, 164 Wn.2d at 384 (citing *Erwin*, 161 Wn.2d at 690-91). FIPA does not demand in-state adjudication of disputes, but the state agency charged with interpreting FIPA, the Washington State Department of Financial Institutions, has issued an interpretive guideline advising:

> The Securities Administrator finds that it is not in good faith, reasonable or a fair act and practice for a franchisor to require an arbitration clause in a franchise agreement that unfairly and non-negotiably sets the site of arbitration in a state other

than the state of Washington. Based on this finding, the Securities Administrator finds acceptable a franchise offering that includes an arbitration agreement that provides for the site of arbitration: (1) in the state of Washington, (2) as mutually agreed upon at the time of arbitration, or (3) as determined by the arbitrator at the time of arbitration.

Franchise Act Interpretive Statement FIS-04, *available at* http://www.dfi.wa.gov/sd/franchiseinterpretive04.htm.

¶30 Even assuming for the moment that the court erred in failing to change venue of the arbitration from Washington to Connecticut, no harm is apparent. The arbitration in Washington was conducted by the same arbitration group and under the same rules as required by the franchise agreements. DAI is a Florida corporation; the parties, the sandwich shops, and the witnesses all appear to be in Washington. DAI fails to show any harm or prejudice in the venue selection.

### D. Limited Review of Arbitration Awards

¶31 Next, DAI argues that since court review of an arbitration award is limited to the face of the award, it is inappropriate to require it to show prejudice because, it asserts, a prejudice analysis would require an analysis of the record before the arbitrator. But a court need not reweigh the *arbitrator's* actions, outside the face of the award, to determine whether the *court's* order prejudiced a party. Thus, for example, we would not need to examine the record before the arbitrator to determine whether the damages were in excess of those plainly allowed by the contract or that due to a choice of law defense, certain legal defenses could not be raised. DAI's position also ignores that courts have done that sort of analysis. *E.g., Coutee,* 336 F.3d at 1134; *Barnes,* 122 F.3d at 823.

¶32 Finally, DAI contends that this approach is inappropriate because the trial court's error was structural. Pet'r's Suppl. Br. at 13. Five justices of this court explicitly rejected the proposition that the concept of "structural

error" had a place outside of criminal law. *In re Det. of D.F.F.*, 172 Wn.2d 37, 48, 256 P.3d 357 (2011) (J.M. Johnson, J., concurring, joined by Chambers, J.), 53 (Madsen, C.J., dissenting, joined by C. Johnson and Fairhurst, JJ.). We find no place for a structural error analysis in this case.

### E. Attorney Fees

¶33 Both sides seek attorney fees: DAI based on the franchise agreement, Saleemi and Sharyar based on RCW 19.86.090 (CPA attorney fees),[8] RCW 19.100.190(3) (FIPA attorney fees),[9] and RCW 7.04A.250(3) (arbitration act attorney fees).[10] We grant Saleemi and Sharyar their attorney fees under RCW 7.04A.250(3) and RCW 19.100.190(3).

¶34 We note the Court of Appeals found that DAI was contractually entitled to attorney fees on its original motion to compel arbitration and remanded to the trial court to determine them. *Saleemi*, 166 Wn. App. at 98.[11] Saleemi and Sharyar did not seek review of this issue, and thus it is the law of the case. DAI's request for appellate fees is denied.

---

[8]
> Any person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060 . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee.

RCW 19.86.090.

[9] "[T]he prevailing party may in the discretion of the court recover the costs of said action including a reasonable attorneys' fee." RCW 19.100.190(3).

[10] "On application of a prevailing party to a contested judicial proceeding under RCW 7.04A.220, 7.04A.230, or 7.04A.240, the court may add . . . attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made." RCW 7.04A.250(3).

[11] The contract provides:

> If prior to an Arbitrator's final decision, either we or you commence an action in any court of a claim that arises out of or relates to this Agreement (except for the purpose of enforcing the arbitration clause or as otherwise permitted by this Agreement), that party will be responsible for the other party's expenses of enforcing the arbitration clause.

CP at 35.

## CONCLUSION

¶35 A party does not waive its right to challenge an interlocutory order by not immediately seeking discretionary review. But a party that fails to seek review of an order compelling arbitration on grounds of venue, damage limitations, or choice of law until after the arbitrators award is known must show prejudice before an appellate court will reach the merits and grant relief. DAI did not seek discretionary review and instead acquiesced to the trial courts order compelling arbitration in Washington. DAI's primary complaint is that the order compelling arbitration directed the arbitrator disregard the damages limitation. But the arbitrator's award reveals the arbitrator carefully limited his ruling to comply with DAI's contract provisions. Given that DAI has not shown any prejudice, we do not reach DAI's contentions on damages, venue, or choice of law. We affirm the Court of Appeals and remand for entry of judgment.

C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.

¶36 MADSEN, C.J. (concurring) — The majority issues an edict that if a party does not ask for discretionary review of an order compelling arbitration, a prejudice standard must be applied on judicial review. The edict is antiarbitration and contrary to the modern trend favoring arbitration. Indeed, most courts conclude that interlocutory review of orders to compel should rarely be granted. *See, e.g., Phillips v. Sprint PCS*, 209 Cal. App. 4th 758, 766, 147 Cal. Rptr. 3d 274 (2012) ("[o]rdinarily, no immediate appeal lies from an order compelling arbitration and review of the order must await appeal from a final judgment entered after arbitration"). Permitting interlocutory review is disfavored because it can cause unnecessary delay of the arbitral process.

*E.g., Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002) ("[u]nnecessary delay of the arbitral process through appellate review is disfavored" (citation omitted)). Indeed, in many states an order compelling arbitration is not appealable. *See, e.g., Dennis v. Jack Dennis Sports, Inc.*, 253 P.3d 495 (Wyo. 2011) (holding that order compelling arbitration was not appealable and citing cases to the same effect from other states).

¶37 The majority's new prejudice standard encourages motions for interlocutory discretionary review. In turn, this encourages the delay that courts disfavor and contravenes goals of arbitration as an efficient, swift form of dispute resolution. It should be rare to permit discretionary review of such orders and we should not penalize parties for failing to seek review that in general should not and will not be granted.

¶38 Our established procedure is to engage in de novo review of the order compelling arbitration, after a final judgment. *Otis Hous. Ass'n v. Ha*, 165 Wn.2d 582, 586-87, 201 P.3d 309 (2009); *Scott v. Cingular Wireless*, 160 Wn.2d 843, 851, 161 P.3d 1000 (2007); *Zuver v. Airtouch Comm'cs, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004). This is the established procedure in other jurisdictions as well. *E.g., Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1230 n.5 (11th Cir. 2012); *Baldwin v. Regions Fin. Corp.*, 98 So. 3d 1210, 1212 n.4 (Fla. Dist. Ct. App. 2012); *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 774-75 (Ind. Ct. App. 2011). The majority's prejudice standard is utterly contrary to our cases holding that de novo review is appropriate.[12]

¶39 Here, our review occurs after arbitration has occurred. I would conclude that while the trial court entering

---

[12] I do not agree that the majority has established that there is a "trend" in courts that requires parties who challenge an order to compel arbitration to establish prejudice from the arbitration award. The cases cited on pages 381-82 of the majority opinion do not support that conclusion.

the order to compel arbitration did not direct that it occur in Connecticut, the order should not be overturned. The trial court in fact granted an order to compel arbitration and carried out the parties' agreement to arbitrate. I do not believe under the facts here that the arbitration that ensued was defective solely because of location. Nothing would be gained in terms of the policies underscoring arbitration. Doctor's Associates Inc. (DAI) concedes that Washington's Franchise Investment Protection Act, chapter 19.100 RCW, applies. Arbitration was conducted under the same American Arbitration Association rules that would have applied had the arbitration been held in Connecticut. In these circumstances, DAI can point to nothing that demonstrates that arbitration in Connecticut would have carried out the parties' agreement to arbitration to any significantly greater degree than actually occurred through arbitration in Washington.

¶40 Because the majority offers a standard of review that encourages parties to seek interlocutory review, when such review can cause delay contrary to policy favoring arbitration, and that places a burden on one party that does not accord with the usual standard courts use providing for de novo review of orders to compel arbitration, I do not agree with its analysis. I concur in the result.